HOUSTON OIL COMPANY OF TEXAS, ET AL V. JACK MOSS, ET UX

No. A-5100. Decided November 2, 1955.
Rehearing overruled December 14, 1955.
(284 S.W. 2d Series 142)

*A. L. Bevil,* of Kountze, *O. A. McCracken, Jr., Burton W. Morris, Blades, Kennerly & Whitworth* and *B. F. Whitworth,* all of Houston, for petitioner, Houston Oil Co. of Texas, et al.

The Court of Civil Appeals erred in reversing and remanded that portion of the judgment of the trial court decreeing that plaintiffs take nothing by their suit for the land specifically described in their petition. Noble v. Cooke, 253 S.W. 2d 911, error refused n.r.e.; White v. Glengarry Oil Co., 137 Texas 626, 156 S.W. 2d 523; Kilpatrick v. Gulf Production Co., 139 S.W. 2d 653.

*Buchanan* and *Stover and Earl B. Stover,* all of Silsbee, for respondents Jack Moss and wife.

In response to contention of petitioner cited, Bracken v. Jones, 63 Texas 184; Smith v. Jones, 103 Texas 632, 132 S.W. 469; Houston Oil Co. v. Griffin, 166 S.W. 534.

MR. JUSTICE WALKER delivered the opinion of the Court.

The principal question in this case may be stated as follows: If an adverse claimant in possession of land conveys the surface and reserves the minerals, does the continued possession of the surface by the grantee inure to the benefit of the grantor and ripen a title by limitaiton in favor of the latter to the minerals reserved by him? The question is considered in the latter part of this opinion and is answered in the affirmative.

Jack Moss and wife, plaintiffs, sued Houston Oil Company of Texas and American Republics Corporation, defendants, for title to and possession of part of the O. C. Nelson League in Hardin County. Basing their claim upon ten years adverse possession of a specific eight-acre tract described in the petition, plaintiffs prayed for recovery of the eight acres less three acres thereof "heretofore conveyed to Mrs. Viera Collier," and also for the recovery of an undefined 160 acres surrounding and including the same. Southwestern Settlement and Development

Corporation and Republic Production Company intervened as defendants. Defendants answered with a general denial and a plea of not guilty and specially pleaded the several statutes of limitation. Trial was before a jury. At the close of all the evidence, defendants' motion for an instructed verdict was granted, and judgment was rendered that the plaintiffs take nothing by their suit. The Court of Civil Appeals has affirmed this judgment in so far as the undefined 160 acres is concerned, but has reversed and remanded for a new trial on the question of the plaintiffs' right to recover the specific tract described in the petition. 273 S.W. 2d 925. Both plaintiffs and defendants applied for a writ of error, and both applications were granted. We have concluded that the defendants were entitled to their instructed verdict, and that the judgment of the trial court should be affirmed.

A map showing the location of the various tracts is reproduced as part of the opinion of the Court of Civil Appeals. The Nelson League is approximately 10,000 varas in length from east to west and 2500 varas wide from north to south. The Mary J. Cunningham 147-acre tract, which is shown on the map, is bounded on the north by the north line of the Survey and on the west by a line parallel to and 1225 varas east of the west line of the Survey. Immediately south of the Cunningham tract is the Mattie Gore 137-acre tract. The eight-acre tract described in the petition is irregular in shape and lies west of and adjoining the Cunningham tract. The three-acre tract "conveyed to Mrs. Viera Collier" is rectangular in shape and is part of the eight acres. The boundaries of the two tracts last mentioned appear on the map as broken lines.

There are two chains of title to the survey emanating from O. C. Nelson, one under a deed executed by him to David Brown dated November 28, 1837, and recorded March 16, 1842, and the other under a deed from Nelson to Isom Parmer dated March 13, 1838, and recorded February 23, 1842. By conveyance from Texas Pine Land Association dated July 31, 1901, the Houston Oil Company of Texas, hereinafter referred to as the Oil Company, acquired the David Brown chain of title to all of the survey except the Cunningham tract, the Gore tract and a tract of 160 acres out of the southwest corner of the Survey. The land involved in this suit is not part of the three tracts last mentioned. The Oil Company claimed to own the land in controversy unde rits deed from Texas Pine Land Association, but in the case of Houston Oil Co. v. Kimball, 103 Texas 94, 122 S.W. 533, and 124 S.W. 85, this Court held that title of W. B.

Kimball et al under the Isom Parmer deed was superior to the title of the Oil Company under the David Brown deed. Thereafter on March 25, 1912, the Oil Company acquired the Isom Parmer chain of title by virtue of a judgment in its favor against W. B. Kimball et al. The plaintiffs contend, and the Court of Civil Appeals held, that the Oil Company became the owner of the record title to the land in controversy for the first time on March 25, 1912. Under the view we take of the present case it is not necessary for us to decide this question, and we will assume that the holding of the Court of Civil Appeals on the point is correct.

Plaintiffs have no deed or other memorandum of title to any part of the land involved in this suit. Their claim of title is based entirely upon ten years adverse possession of the eight-acre tract described in the petition. The Cunningham 147-acre tract was owned by Jessie Moss, the father of Jack Moss, from 1896 until 1913. The evidence shows that the plaintiffs were married on May 2, 1902, and soon thereafter constructed a dwelling house on and near the southwest corner of the Cunningham tract; that they moved into this house during the month of July, 1902, and resided there until the early part of January 1914, When they moved to Liberty County; that after the completion of the house, they cleared and fenced a field consisting of the eight-acre tract and a small portion of the Cunningham tract; that they cultivated this field, or portions thereof, each year from 1902 until 1913; that they placed certain improvements, including a sheep pen, a smoke house, and possibly other outhouses, on the eight-acre tract; and that they maintained the field fence throughout the period of their occupancy of the house. Plaintiffs testified that they were claiming the land under fence as their own. We agree with the Court of Civil Appeals that the evidence raised an issue of fact for the jury as to whether plaintiffs matured title by limitation to the inclosure.

Plaintiffs also testified that they were claiming 160 acres of land during the period of their use of the inclosure. The Court of Civil Appeals concluded that under the encroachment doctrine the plaintiffs' recovery, if any, must be limited to their inclosure. Plaintiffs assert that this is not a proper case for the application of the encroachment doctrine as a matter of law. Since we think the plaintiffs must be restricted to their enclosure for other reasons, it is not necessary for us to pass on this question.

On July 17, 1901, the Oil Company made a timber contract

with John H. Kirby whereby it sold him the pine timber on certain lands, including "about 105,941 acres acquired from Texas Pine Land Association," and authorized him to enter upon the land, erect mills and lay and maintain tram and other roads. in 1898 Texas Pine Land Association had built a tram road across the western portion of the Nelson League, and Kirby Lumber Company purchased this road and operated the same continuously from January 1, 1902, until it was taken up in 1942. Defendants contend that this tram road operation effectively limits the plaintiffs' recovery to the land which they had in actual possession.

■ The effect of Art. 5510, Texas Rev. Civ. Stat. 1925, is to give the adverse claimant, who claims an undefined 160 acres including the improvements or inclosed acreage in his actual posession, constructive possession of the portion of the undefined 160 acres not improved or inclosed. See Kirby Lumber Co. v. Conn, 114 Texas 104, 263 S.W. 902. It is well settled, however, that upon the entry of the true owner upon any part of his land, the seizing and constructive possession of such owner extends to all of his land which is not in the actual possession of another. Evitts v. Roth, 61 Texas 81. If, therefore, the true owner of a tract containing more than 160 acres has actual possession of part of the land, the adverse possession of a claimant under the ten year statute does not extend beyond the part the latter is actually occupying.

Plaintiffs argue that the maintenance and operation of the tram road was not a sufficient entry because it was not accompanied by the cutting of timber as in Furlow v. Kirby Lumber Co., Tex. Civ. App., 53 S.W. 2d 642, no writ. The opinion in that case does not disclose whether the cutting of timber was regarded as essential to the result there reached. It is our opinion, however, that any entry upon and use of part of the land by the true owner will restrict the adverse claimant to the property in his actual possession, and that the maintenance and operation of a tram road is sufficient. While we are not here confronted with the question of whether possession by an adverse claimant through tram road operation alone will mature title by limitation, it has been held that the construction, maintenance and operation of a tram road throughout the period of limitation, accompanied by the cutting of timber or other uses of the land during *part* of such period, is sufficient to establish title by limitation under the five year statute. Dargan v. Keystone Mills Co., 126 Texas 80, 86 S.W. 2d 627; Houston Oil Co. v. Billingsley, Texas Com. App., 213 S.W. 248; Harvey v.

Humphreys, Tex. Civ. App., 178 S.W. 2d 733, wr. ref., w.o.m. If the operation of a tram road is such occupancy as will run out the statute of limitation in favor of an adverse claimant under such circumstances, it is even more certain that such an operation when conducted on the land by the true owner will restrict the adverse claimant to the property in his actual possession.

■ As pointed out by the Court of Civil Appeals, the record does not show the connection between John H. Kirby and Kirby Lumber Company. R. L. Weathersby, an employee of the company, testified, however, that the company's maintenance and use of the tram road across the western portion of the Nelson League was with the permission of the Oil Company, and this testimony is not controverted. It necessarily follows that the tram road operation was legally an entry upon and use of the land by the latter company. As stated in Cobb v. Robertson, 99 Texas 138, 86 S.W. 746, 748, 122 Am. St. Rep. 609, "a contract of leasing or renting is not essential to the holding possession by one for another. If the tenant enter under the title of another and hold by permission, or at sufferance, he is estopped to deny such title and the possession, in law, is that of the owner."

On March 25, 112, the constructive possession of the Oil Company, by virtue of the fact that it became the true owner of the land on that date coupled with its entry upon and use of part of its land through the tram road operations, extended to and interrupted the adverse possession of the plaintiffs with respect to all of the land not in the actual possession of the plaintiffs. On that date the plaintiffs had not matured a limitation title under the ten-year staute, because their possession began after May 2, 1902. Any title which they thereafter perfected was necessarily limited to their inclosure.

We now turn to the question of whether the evidence shows as a matter of law that the defendants perfected a counter limitation title to the inclosure and the minerals thereunder. This claim of the defendants is predicated upon the possession of the tract by their tenants, Babe Meguez and wife. Soon after the plaintiffs moved to Liberty County in 1914, the house which they had built on the Cunningham tract was destroyed by fire. The uncontradicted evidence shows that shortly thereafter Meguez and wife constructed a house on the Nelson League just south of the eight-acre inclosure; that they moved into the house on February 22, 1914, and continued to reside there until some time in 1922, when the house was moved to another location on the Nelson League and north and west of the eight-acres tract;

that they continued to reside in the house at the new location until September, 1929; and that they cultivated the inclosure and kept the fences in repair during the period from 1914 until 1929.

On August 4, 1916 the Oil Company conveyed to Southwestern Settlement and Development Company, hereinafter called Southwestern, all land and interest in land owned or claimed by or in the possession of the grantor anywhere in the State of Texas. This deed reserved to the grantor all of the oil and gas in and under the land. Thereafter on November 15, 1916, the two companies conveyed to Republic Production Company, hereinafter called the Production Company, an undivided one-half interest in the oil, gas and other minerals; and part of the interest so conveyed was acquired by American Republics Corporation on December 16, 1941. All property and assets of Southwestern were conveyed to Southwestern Settlement and Development Corporation in 1933.

Maguez and wife executed two acknowledgments of tenancy covering the entire Nelson League. The first, which was executed on March 23, 1914, acknowledged tenancy under the Oil Company and bound the tenants to use the land for farming purposes only and to prevent trespasses thereon. The second is dated August 2, 1922, and acknowledges tenancy under Southwestern, the Oil Company, the Production Company and Kirby Lumber Company. The latter instrument recites that the four companies "are collectively (each having respective interests in accordance with the contractual relations between them * * * ) owners in fee simple" of the land described, and binds the tenants to use the land for farming and ranching purposes and to prevent trespasses thereon.

■ The 1914 acknowledgment of tenancy provided that nothing therein should prevent the Oil Company and its assigns from going or remaining upon the land or any part of same for any purpose, or from making improvements or sinking wells, at any time. Plaintiffs contend that the relationship of landlord and tenant was not created by this instrument, because it did not vest in Meguez the exclusive right to possession, and hence that his possession did not inure to the benefit of the company. We overrule this contention. It is sufficient that Meguez entered into and held possession under and with the permission of the company, and when he began occupying the inclosure his possession was in legal contemplation the possession of the company. See Cobb v. Robertson, supra.

■ The testimony of Mrs. Lee Gore, who was formerly the wife of Babe Meguez and who occupied with him the land in controversy during the period mentioned above, is quoted at some length in the opinion of the Court of Civil Appeals. She stated that prior to the execution of the 1914 acknowledgment of tenancy, she and Meguez had purchased from Lee Gore three acres of the Jack Moss inclosure, which three acres had been acquired by Gore from Jack Moss; that the deeds were never placed of record and were lost and the three acres were never run out; that the person with whom they dealt in giving the acknowledgment of tenancy recognized their right to the three acres; that the three acres was not included in the acknowledgment of tenancy; and that she and Meguez claimed the three acres and paid the taxes thereon. Plaintiffs insist that in the light of this testimony, the defendants did not mature a limitation title to any of the inclosure. They argue that since Meguez had a superior claim to part of the inclosure, which was recognized by the agent of the Oil Company at the time the acknowledgment of tennancy was executed, the possession of the company through Meguez was not exclusive, was in recognition of plaintiffs' title, was not taken under a claim of right and was not hostile. We have concluded that there is no merit in these contentions. By the terms of the acknowledgment of tennancy, which was duly executed and acknowledged, Meguez and wife acknowledged the title to the entire Nelson League to be in the Oil Company. The instrument also stipulated that "any right, title or claim in and to said premises that we may have already acquired by occupancy or otherwise * * * shall at the election of said Company enure to the benefit of said Company; and we do grant, bargain, sell and convey same unto said Company * * * ." This instrument has not been set aside or reformed, and has not been attacked by any party thereto; and the plaintiffs, who are strangers to the instrument and do not hold or claim under any party thereto, are not in position to attack the same. Under its provisions, any claim which Meguez and wife may have had to three acres of the inclosure was conveyed to the Oil Company, and when they entered upon and began using the tract, they held possession of the entire inclosure for that company. Their intention to claim three acres in their own right was not a recognition by the company of the plaintiffs' title, and could not affect the hostile character of the company's claim to the land.

■ We are satisfied, therefore, that the defendants perfected title by limitation to the surface of the inclosure. We must now

determine whether the defendants also acquired a counter limitation title to the mineral interests claimed by them.

Neither Meguez nor any of the defendants made an effort to explore for or produce any minerals under the inclosure; and Meguez could not legally have done so because his use of the land was restricted to farming and ranching. The plaintiffs contend that under the authority of Thomas v. Southwestern Settlement & Development Co., Tex. Civ. App., 131 S.W. 2d 31, wr. dism. judg. cor., none of the defendants had possession of the minerals after 1922 and hence could not have acquired title thereto under the ten year statute.

In the case last cited, the Oil Company, Southwestern, the Production Company and Kirby Lumber Company sought to establish title to an undivided interest in land by five years adverse possession through tennants holding under acknowledgments of tenancy similar to the 1922 instrument executed by Meguez. There, as in the present case, the Oil Company had in 1916 conveyed the land, except the oil and gas, to Southwestern and later in the same year the two companies conveyed an undivided interest in all minerals to the Production Company. The tenancy agreement was executed, and the possession of the tenants thereunder began, some nine years after such conveyances were made. The court reasoned that to acquire title under the five year statute the claimant must claim under a deed or deeds duly registered; that the title acquired under this statute cannot exceed that purportedly conveyed by the muniments of title under which possession is held; that the use of the land by the tenant was confined to the surface claimed by Southwestern; that possession of the surface claimed wholly by that company, which did not claim the oil and gas, could not be extended by construction to include the oil and gas claimed by the Oil Company and the Production Company; and that the true owners lost title under the five year statute only to the extent of land or interests in land purportedly conveyed by the recorded muniments of title under which Southwestern claimed.

It will be noted that the surface possession in the Thomas case began after the execution of the conveyances by the Oil Company to Southwestern, and by the two companies to the Production Company, and the companies asserted title under the five year statute. In our case, however, the adverse possession began, and the statute of limitation started to run, prior to the segregation or severance of the claims of the respective

limitation claimants, and the claim is based on the ten-year statute.

Clements v. Texas Company, Tex. Civ. App., 273 S.W. 993, 1005, wr. ref., recognized for the first time in this State the rule that "a severance by one in possession, who has not yet matured a title, does not abandon, limit or qualify his possession for the purpose of ripening a title against the true owner out of possession; and that, as against such disseized owner, the continued possession of a trespasser after severance, as before, is adverse, and that such possession continued by either the trespasser or the third person to whom he severs will mature a title by limitation to the entire tract as against such disseized owner." This statement of the rule was quoted and applied in Leverett v. Leverett, Tex. Civ. App., 59 S.W. 2d 252, wr. ref., and Laird v. Gulf Production Co., Tex. Civ. App., 64 S.W. 2d 1080, wr. dism. The "severance" in these three cases was by mineral lease, and in the Clements case the lessee began active exploration for oil, but the rule is not limited to this situation.

Among the authorities cited and relied upon by the court in the Clements case are Black Warrior Coal Co. v. West, 170 Ala. 346, 54 So. 200, and Moore v. Empire Land Co., 181 Ala. 344, 61 So. 940. There the attempted severance was by deed and there was no production of minerals, and it was held that the continued possession by the grantor of the surface reserved by him, or the possession by the grantee of the surface conveyed to the latter, matured title by limitation to the minerals.

At least two Texas courts have recognized the principle as applicable where the "severance" is by deed. In Kilpatrick v. Gulf Production Co., Tex. Civ. App., 139 S.W. 2d 653, 656, wr. dism,. judg. cor., the claimant in possession executed a deed conveying all minerals under the land, and it was contended that the subsequent possession of the surface by the grantor did not mature in the grantee a title by limitation to the minerals. In overruling this proposition, the court stated:

"* * * It is the law of this state that a deed executed by one in possession, and who continues his possession the full length of the limitation period, severing the mineral rights from the surface, does not stop the running of the statute of limitation in favor of the mineral rights. * * * ."

In McLendon v. Comer, Tex. Civ. App., 200 S.W. 2d 427, 430, wr. ref., n.r.e., the adverse claimant in possession executed

a deed purporting to convey the surface and reserving all minerals, and the subsequent possession of the surface by the grantee was relied upon to complete the period of limitation with respect to the reserved mineral estate. After referring to the rule announced in the Clements case, the Court said:

"* * * the possession of the grantee of the surface estate continued by him after severance will inure to the benefit of his grantor who reserves the mineral estate and will ripen a limitation title in such grantor."

The opinions in the two cases last cited also state other grounds for the judgments entered therein, but we have concluded that the rule announced in the Clements case is sound and controls our disposition of this case. Assuming, as we do, that the plaintiffs had perfected a limitation title to the inclosure, they were vested with legal title to both the surface and the minerals. The deeds executed by the Oil Company to Southwestern, and by these two companies to the Production Company, while binding upon the parties thereto, did not at the time of their execution effect an actual severance of the surface and mineral estates, because the parties did not have title. See Thomas v. Southwestern Settlement and Development Co., 132 Texas 413, 123 S.W. 2d 290. The possession of the surface by the grantee under these circumstances continued to give notice to the plaintiffs of the hostile claim being asserted by the three companies collectively against the plaintiffs' title to the combined surface and mineral estate. The writer in 26 Tex. Law Rev. 108 states that this is the rationale of the rule we have been discussing, and concludes that the result of the McLendon case is sound. Our views are there well expressed in the following language:

"* * * As against a third party, possession by either the grantor or grantee where severance is attempted by a trespasser should be regarded as possession of the entire premises for the benefit of both, since collectively they are asserting a common title against the third party of which he has adequate notice by the possession of either. The result in this case is also desirable for policy reasons in that it will protect property owners, since in most cases it is the rightful owner who must rely upon the statute of limitations to protect his title against the assertion of old claims."

Plaintiffs say that the 1922 acknowledgment of tenancy, executed after the Oil Company's conveyance to Southwestern,

superseded the 1914 acknowledgment of tenancy, but we do not regard this as material. The adverse possession of the Oil Company began in 1914 when Meguez entered under the acknowledgment of tenancy executed that year. The attempted severance of the surface and mineral estates occurred thereafter. By the terms of the 1922 instrument, Meguez held possession of the land under and for the four companies named therein. In so far as the surface was concerned, his possession was that of Southwestern, but there is nothing in the instrument which would limit the legal effect of this possession to the surface estate claimed by that company. Under the facts of this case, the possession of the surface of the land by Southwestern through Meguez inured to the benefit of the Oil Company and the Production Company, and perfected a limitation title in favor of the three companies to both the surface and mineral estates in accordance with their respective interests under the deeds mentioned.

The judgment of the Court of Civil Appeals is reversed, and the judgment of the trial court is affirmed.

Opinion delivered November 2, 1955.

Rehearing overruled December 14, 1955.