Robert CARGILL, Appellant,

v.

S. T. BUIE et al., Appellees.

No. 7276.

Court of Civil Appeals of Texas.

Texarkana.

Dec. 20, 1960.

Rehearing Denied Jan. 24, 1961.

Fulton, Hancock & McClain, Gilmer, Smead & Harbour, Longview, for appellant.

Jones, Brian & Jones, Marshall, Welby K. Parish, Gilmer, for appellees.

CHADICK, Chief Justice.

This is an appeal from an order granting a temporary injunction. The decree is affirmed.

On March 2, 1929, W. M. Squires and wife deeded S. T. Buie a tract of land in the E. Martin Survey of Upshur County. Following execution of the deed Squires surrendered possession to Buie of a fence enclosed tract which a survey in 1932 showed to contain 215 acres. The 1932 survey located within the enclosure 8.83 acres of the right-of-way of Port Bolivar Iron Ore Railway Company. From the time Squires surrendered possession of the tract to Buie, Buie maintained and improved the three-strand barbed wire fences enclosing the land until it was cut by Robert Cargill's representative a short time before suit. The railroad had ceased to operate several years before Buie purchased the tract from. Squires, but at that time some of the rails and cross-ties were in place on the right-of-way and the roadbed was visible. The right-of-way crossed the fenced tract about midway between its east and west lines.

In May, 1960, Robert Cargill, having previously acquired a record title to the railroad's tract, cut Buie's south fence and entered upon the right-of-way and began preparing an oil well drillsite and moving in drilling equipment. Preparation of the drillsite included clearing trees and underbrush and earth leveling work. The latter involved shifting surface soil from one position to another, and the destruction of grass and other vegetation.

On June 2, 1960, a temporary restraining order was issued at Buie's behest, restraining Cargill from continuing with the drillsite preparation and the application for temporary injunction set for hearing on June 11, 1960. At this last date an amended petition had been filed in which some 25 persons were joined with Buie as plaintiffs, and 10 others made defendants with Cargill. Following this hearing a temporary injunction was granted restraining Cargill and his employees from entering and continuing drilling activities upon the land described in the petition.

Appellant Cargill contends that Buie has shown no probable right to the title or possession of the 8.83 acre railroad right-of-way, and has failed to establish that he will probably suffer injury for which he has no adequate and complete remedy at law.

■ Cargill emphasizes and relies upon his contention that the land conveyed in the Squires to Buie deed is described with reference to the W. Hamp Jones homestead tract, and the deed properly construed excludes from its grant the right-of-way tract. In his argument he assumes a reference therein to the W. Hamp Jones homestead necessarily meant the W. Hamp Jones homestead at the time of his death, and since W. Hamp Jones conveyed the 8.83 acre tract to the railroad in 1911 prior to death the conveyed tract was no part of the homestead thereafter.

Pertinent to this inquiry the Squires deed to Buie describes the land conveyed as follows:

"* * * all that certain tract or parcel of land, situated in Upshur County on the E. Martin HR Survey, there being 200 acres more or less in said homestead tract.

"Said W. Hamp Jones homestead tract hereinabove referred to being a part of a four hundred and ninety acre tract, described in a deed from Louisa Jones to W. H. Jones, recorded in Vol. 'R' page 14 of Upshur County Deed Records. It being the intention of this deed to convey only that portion of said homestead tract lying west of the Longview and Coffeyville Road and lying South of the Gilmer and Marshall

Road, known as the Culberson Highway, * * *."

Of materiality here the deed from Louisa Jones to W. H. Jones, recorded in Volume R, page 14 of the Deed Records of Upshur County, Texas, contained this description of land:

"* * * a certain tract or parcel of land lying and being in said County N. of little Cypress and bounded as follows: Said tract containing four hundred & Ninety-six acres and bounded on the N. by the lands of W. H. Jones & Mrs. Ritta Birds on the E. by the lands of Mrs. Catharine Hawkins now Mrs. *Fuller* on the south by the lands of Miss Nancy M. Jones, now Mrs. Mattox."

The homestead referred to for descriptive purposes in the Squires deed to Buie does not refer to the W. Hamp Jones homestead as it existed at any particular time. Nothing in the Squires deed to Buie or the Louisa Jones to W. H. Jones deed expressly or by implication limits the W. Hamp Jones homestead to that as it existed at the date of his death. It is expressly stated in the Squires deed that it is the intention of the conveyance to convey that portion of the homestead tract lying west of the Longview and Coffeyville road and south of the Gilmer and Marshall road. This language appears to be comprehensive in nature, and does not exclude from the operation of the deed any land once a part of the homestead tract but later conveyed by W. Hamp Jones in his lifetime. There is nothing in the Squires deed or the deed it refers to limiting the description of the land conveyed to the W. Hamp Jones homestead as it existed at the date of W. Hamp Jones' death. It follows that there is no support for the basic assumption made in the Cargill brief that the W. Hamp Jones homestead referred to in the Squires deed meant the W. Hamp Jones homestead at the time of his death.

Cargill's failure to sustain this thesis disposes of his contention that the railroad land was not conveyed as a matter of law by the deed from Squires to Buie and the related contentions that Buie's statements in the course of cross-examination, that he claimed no land in the Martin survey except that conveyed to him by the Squires deed, constituted a judicial admission conclusively barring him from asserting claim to the railroad right-of-way tract; as well as the contention that the description of the land in the order granting the temporary injunction is insufficient because it is substantially the same as that contained in the Squires to Buie deed, and thereby renders the order void.

■ The testimony of Buie corroborated by other witnesses is that at the time Buie went into possession of the 215 acre tract (including the railroad's 8.83 acres) it was under fence sufficient to turn stock, and that thereafter he maintained such possession and continuously used it to the date of trial, a period of 31 years, for grazing purposes, and exercised exclusive dominion over it and claimed title to it. As evidence to the contrary Cargill showed that in 1932 Buie executed a ratification agreement with Magnolia Petroleum Company with respect to an oil, gas and mineral lease dated September 13, 1930, between Buie and the Vacuum Oil Company, in which it is stated:

"* * *, an actual survey has been made of the land covered by said lease, and the parties hereto desire to reaffirm the intention to include in said oil, gas and mining lease, all the land owned, claimed, or held by the undersigned in the Elijah Martin Survey, Upshur County, Texas, under deed dated March 2, 1929, from W. M. Squires, et ux to S. T. Buie, recorded in Vol. 68 at page 534 of Deed Records of Upshur County, Texas,"

and continues with a description of 206.18 acres of land as that covered by the lease, and excepted therefrom a described 8.83

acre tract which it recited had theretofore been deeded to Port Bolivar Iron Ore Railway Company.

Appellant Cargill urges that making the ratification agreement and formally acknowledging it is a conclusive admission by Buie that the Squires Deed did not cover, include or convey the railroad right-of-way tract of land. The instrument does not have the conclusive effect that the appellant attributes to it. The ratification instrument is not in Cargill's chain of title to the railroad land, and he does not claim title by or through it. The instrument therefore can not constitute an estoppel by deed. See 31 C.J.S. Estoppel § 37 d, p. 215; Harris v. Mayfield, Tex.Com.App., 260 S. W. 835, op. adopted; Robert Oil Corporation v. Jones, Tex.Civ.App., 23 S.W.2d 472, error dismissed. The recital in the instrument is an extra-judicial admission. See 2 McCormick and Ray, Secs. 1124 and 1127. Such admission as made by the instrument is evidence against Buie, but is not conclusive in the sense that it may not be rebutted by other evidence. 2 McCormick and Ray, Texas Law of Evidence, Sec. 1128, and Bennett v. Romos, 151 Tex. 511, 252 S.W.2d 442. The ratification instrument was evidence to be weighed along with all the other evidence by the trial judge in his determination of the facts.

■ Appellant Cargill contends that irreparable injury is not shown. He claims that drilling an oil well upon the railroad tract would not be harmful to Buie. His argument is that if Buie recovered title in a trial on the merits he would take title to a flowing well free of the cost of drilling and equipping it. Ergo, Buie would be helped, not harmed. In support of that contention Humble Oil & Refining Co. et al. v. Luckel et al., Tex.Civ.App., 154 S.W. 2d 155 is cited. Cargill's theory finds no support in law. It is settled policy that a person in possession of lands, using and enjoying them will be protected from wrongful attempts by others to invade the possession, or to destroy its use and enjoyment. Such invasions have no plain and adequate remedy except by injunction. This policy with reference to mineral development has firm support in Hastings Oil Co. v. Texas Company, 149 Tex. 416, 234 S.W.2d 389.

■ All parties to the appeal recognized the applicability of the rule laid down in Transport Co. of Texas v. Robertson Transports, Inc., 152 Tex. 551, 261 S. W.2d 549, that a temporary injunction will not be disturbed on appeal when the pleadings and the evidence presented a case of probable right and probable injury. The pleadings and the evidence in this case amply support the implied findings and judgment rendered in the trial court.

Appellant's points are respectfully overruled, and the judgment of the trial court is affirmed.

On Motion for Rehearing.

Appellant Cargill's motion for rehearing urges nothing not presented initially and disallowed after a thorough consideration. However, a defensive theory has crept into the case that adverse possession for the requisite time will not mature a limitation title to the mineral estate if after the adverse possession began the mineral estate was severed from the fee. This theory will be briefly discussed.

Perhaps clarity will be served by mentioning that Port Bolivar Iron Ore Railway Company suffered a Deed of Trust lien to be foreclosed on its interest in the 8.83 acres, and its title thereto was transferred to Jewell P. Lightfoot, who in turn deeded the tract to the Port Bolivar Company, a corporation, by an instrument dated July 27, 1934, reserving to himself an oil payment out of one-fourth of the minerals. The Port Bolivar Company on September 1, 1934 conveyed by separate instruments fractional mineral interest to six different grantees. It is as lessee of some or all of the present owners of these mineral interests, as well as owner of a fee title emanating from the Port Bolivar Company

that Cargill claims the right to explore for and produce minerals from the tract. The original opinion mentions evidence before the trial judge that Buie's adverse possession of the 8.83 acre tract began March 2, 1929, the date of the deed from Squires to Buie.

 There was evidence before the trial judge that Buie's adverse possession began, and the statute of limitation started to run prior to the severance of the mineral estate from the fee, and continued without interruption for approximately 30 years. Severance of the mineral estate from the surface under such circumstances will not nullify the effect of the 10 year limitation statute. See Duval County Ranch Company v. Foster, Tex.Civ.App., 318 S.W.2d 25, n. r. e.; Houston Oil Company of Texas v. Moss, 155 Tex. 157, 284 S.W.2d 131; Leverett v. Leverett, Tex.Civ.App., 59 S.W.2d 252, w. r.; Clements v. Texas Company, Tex.Civ.App., 273 S.W. 993, writ refused; 2 Tex.Juris, 2d, 122, sec. 59.

The motion for rehearing is overruled.

DAVIS, Justice.

I dissent. I can not conceive of any way that the appellees can acquire title to the mineral interest in the land involved in this lawsuit when some of said minerals have been severed from the surface. There are several mineral deeds executed on the 8.83 acres of land on and after September 1, 1934. Appellant holds leases to such mineral interest.

The deed from W. M. Squires and wife to S. T. Buie, one of the appellees herein, did not describe the 8.83 acres of land conveyed by W. Hamp Jones to Port Bolivar Iron Ore Railway Company. There is no evidence in the record of the fact that such acreage was a part of the land described in appellees' petition, nor in the order granting the injunction. S. T. Buie admitted in the trial that he only claimed the land in the Martin survey that was conveyed to him in the Squires deed.

S. T. Buie and wife, Blanch Buie, executed a Ratification Instrument to Magnolia Petroleum Company on the 27th day of December, 1943. In such instrument, they admitted that they did not own the 8.83 acres of land involved in this case. I am afraid they are estopped by this Ratification Instrument from claiming the property by adverse possession. They would be estopped by the instrument to claim the property by adverse possession against anyone purchasing the same. Snyder et al. v. Magnolia Petroleum Co. et al., Tex.Civ.App., 107 S.W.2d 603, err. dismissed; Hamilton v. Hamilton, 154 Tex. 511, 280 S.W.2d 588; 31 C.J.S. Estoppel §§ 55, 60, pp. 231, 242.

I would reverse the judgment of the trial court.