**REPUBLIC NATIONAL BANK OF DALLAS
et al., Appellants,**

**v.**

**Charley H. STETSON et ux., Appellees.**

**No. 6589.**

Court of Civil Appeals of Texas.

Beaumont.

Aug. 13, 1964.

Rehearing Denied Sept. 18, 1964.

Second Motion for Rehearing Denied
Oct. 7, 1964.

James L. McNees, Jr., Dallas, W. R. Choate, Houston, Bradford Pickett, Liberty, Malcolm Cohn, Cleveland, for appellants.

Zbranek & Friend, Liberty, for appellees.

PARKER, Justice.

This suit in trespass to try title was filed by the plaintiffs on November 4, 1959, with an amended petition filed April 6, 1961, suing the defendants in the latter pleading for 58.932 acres within a fenced enclosure in the Martinez League No. 2, Abs. No. 65, Liberty County, Texas, and a tract of 19.970 acres within a fenced enclosure in the Martinez League No. 2, Abs. No. 65, and the Cope Survey, Abs. No. 154, Liberty County, Texas. Plaintiffs were Republic National Bank of Dallas as independent executor and trustee of the Estate of Wirt Davis, Deceased, Wirt Davis, II, Mrs. Patricia Davis Beck and husband, Henry C. Beck, Jr., and Mrs. Camilla Blaffer and her husband, John H. Blaffer, hereinafter referred to as in the trial court. The defendants were Charley H. Stetson and wife, Mrs. C. H. Stetson, hereinafter referred to as defendants as in the trial court. Defendants answered formally, specially pleading the ten year statute of limitations; by way of cross action, defendants as cross-plaintiffs affirmatively asserted the ten year statute of limitations to their two separate enclosures, describing such enclosures by field notes as also described in plaintiffs' amended pleading, plus enough additional acreage to aggregate 160 acres. Cross-plaintiffs also alleged a parol gift of such 160 acres by cross-defendants' predecessor in title, Wirt Davis, deceased. By supplemental petition plaintiffs plead the three and five year statutes of limitations as to the enclosures described in their amended pleading and the lands described in defendants' pleadings. It was stipulated that unless defendants had title by limitation and/or parol gift that the plaintiffs had a record title to the Martinez League No. 2, Abs. No. 65, and the Cope Survey, Abs. No. 154, in Liberty County, Texas. Trial was to a jury. The jury answered special issues in favor of defendants on their claim of title under the ten year statute of limitation as to their enclosures. In answer to Special Issues Nos. 2, 3, and 4, the jury found that: (a) Wirt Davis, in 1940, made a parol gift to Charley H. Stetson of such enclosures, plus sufficient additional acreage to aggregate 160 acres, (b) after said gift was made, that Charley H. Stetson had possession of said premises with the consent of said Wirt Davis, or his agents, and (c) after said gift was made, that the said Charley H. Stetson made permanent and valuable improvements on said premises in reliance on said gift with the knowledge of the said Wirt Davis, Sr., or his agents. After the jury returned such verdict, the court entered an interlocutory order directing the County Surveyor of Liberty County to select and make an accurate survey of such 160 acres to include the two enclosed tracts with instructions to equitably separate said 160 acres from the remainder of the lands in said Martinez League and the Cope Survey. The Surveyor, having performed such duties, made his report on the 7th day of March, 1962, and filed it on March 8, 1962. On the basis of the survey so made, judgment was entered for the defendants for the title to and possession of such 160 acres so surveyed as against the original plaintiffs and cross-defendants.

This opinion deals with plaintiffs' points in reverse order to some extent. We consider such points in the following order: Points 6 and 7; Points 3, 4 and 5; Point 8; and, then, Points 1 and 2.

By their Point 6, plaintiffs assert that the trial court erred in submitting Special Issue No. 2 and in refusing to enter judgment for plaintiffs on their record title, plaintiffs contending there was no evidence to support the submission of such issue and the jury's answer thereto. Point 7 is identical except the contention is there was insufficient evidence. In the answer to Special Issue No. 2, the jury found that Wirt Davis in 1940 made a parol gift to Charley Stetson of his enclosures containing some 79 acres plus sufficient additional acreage to aggregate 160 acres.

In the brief for appellants (plaintiffs) they state: "It is not controverted that defendant Charley H. Stetson has been in possession of two enclosures totaling approximately 79 acres * * * since approximately 1921."

In 1940 Wirt Davis was familiar with lands and the laws relating to lands. He was a landowner and an attorney. Stetson knew a man could recover 160 acres, including his enclosures, under the limitation laws without a deed. Time and again, Stetson testified: That in 1940 Wirt Davis gave him his home, the land he was entitled to recover by limitation, and of telling Davis that he had title by limitation; that Davis admitted this, and gave the land to Stetson; and that as part of the gift, Davis said he would pay the taxes, which he did.

Stetson's counsel asked him the following question:

"Q. Let's clear up one thing, Mr. Stetson. In this conversation where you say that Wirt Davis, Sr., gave you this home place, how much acreage was that?

"A. 160 acres."

Such was the acreage that Stetson considered he and Davis were discussing.

Plaintiffs contend that "the figure of 160 acres represents Mr. Stetson's conclusions, and not Mr. Davis' purported gift" and, accordingly, "constitutes no evidence whatever that a gift of 160 acres was made." This contention of plaintiffs is based upon the following questions and answers upon cross-examination, after Stetson had stated the gift was of 160 acres:

"Q. I ask you just a simple question: Presuming that he did not give it to you at that time, I think you have testified now on this trial that he gave it to you the first time he ever saw you.

"A. Yes, sir.

"Q. And said 'Take that 160 acres, Charley.'

"A. He didn't tell me 160 acres. He just told me, 'Charley, I know that is your home, I want you to have it.' * * *".

The record reflects that Stetson and Davis were talking about the amount of land they both considered Stetson had acquired by limitation under Art. 5510, Vernon's Ann. Civ.St., that is, 160 acres. Stetson was the possessor. Davis was the person having right of action. From such last answers of Stetson, plaintiffs argue that Stetson denied that he and Davis discussed any specific amount of acreage, and, therefore, Wirt Davis did not, in any manner, tell Stetson he was giving him 160 acres. The jury construed this testimony of Stetson's to mean that Davis gave him the acreage including his enclosures that Art. 5510 would authorize Stetson to hold, i. e., 160 acres. Such is not an unreasonable construction of the evidence.

There being probative evidence supporting the answer of the jury to Special Issue No. 2, plaintiffs' Point 6 is overruled.

From 1940 until Davis' death in 1945, Richards, the agent of Davis, never tried to get an acknowledgment of tenancy from Stetson, although he did from others. Rich-

ards knew Davis to be a man of his word. Richards reported activities on these lands to Davis from 1940 to 1945. During this period, Richards saw the valuable improvements Stetson placed upon the property. Stetson spent in excess of $1,000.00 on such improvements after Joe Soloman paid one dollar per acre for adjoining land. Under similar facts of long possession, Davis gave another man land on said surveys. The foregoing facts are consistent with the direct evidence of the gift.

Considering all the evidence bearing upon the answer of the jury to Special Issue No. 2, both favorable and unfavorable, we hold that the direct evidence of such gift, the other facts and circumstances established by the evidence and the inferences which can reasonably be drawn therefrom, support the jury's ultimate conclusion embodied in their answer to such Special Issue. Such jury answer is not clearly wrong and unjust. Plaintiffs' Point 7 is overruled.

Plaintiffs, in their Point 3, assert as a matter of law, they matured title to the lands in controversy under the three and five year statutes of limitation. Alternatively, in their Points 4 and 5, plaintiffs assert that the trial court erred in refusing to submit their requested issues inquiring of the jury as to such statutes of limitation. It was stipulated that plaintiffs had record title to the lands in controversy "subject to the rights and the claims of these defendants and cross-plaintiffs to recover said premises under their claim of title by virtue of the ten year statute of limitation and/or parol gift, all in accordance with the pleadings of the said parties, and subject to the rights and claims of the plaintiffs and cross-defendants to defeat any title established by defendants and cross-plaintiffs under the plaintiffs and cross-defendants' claim of title by virtue of the three and five year statutes of limitation, all as set forth in their pleadings."

Full title to the land within the enclosures was acquired from Wirt Davis by Stetson both by limitation and by gift. That part of the 160 acres recovered by Stetson outside of the enclosures was acquired by Stetson only by virtue of gift from Wirt Davis in 1940. After title was divested out of Wirt Davis as to the lands in controversy, he never obtained any deed or conveyance of the lands in controversy from anyone. After the death of Wirt Davis in 1945, the plaintiffs have been claiming the land under Wirt Davis. They have not obtained any deed or conveyance entitling them to claim the land under the three year statute of limitation or the five year statute of limitation. The only instruments plaintiffs have obtained are the two instruments from Charley Stetson. The first was dated March 28, 1947, but was not filed for record until December 19, 1955, and is an acknowledgment of tenancy. The second instrument was signed by Mr. and Mrs. Stetson on November 5, 1954, and had no description of any land in the instrument at the time of the signing of same. It conveyed no land and plaintiffs do not contend it conveyed any land. It was not of record five years before the instant suit was filed. The acknowledgment of tenancy by Charley Stetson in 1947 was obtained many years subsequent to his acquiring all title to the lands in controversy. It did not have the effect of divesting title out of Charley Stetson. After title to the lands in controversy was divested out of Wirt Davis, he and the plaintiffs claiming under him after his death in 1945 did not have title or color of title thereto. Plaintiffs did not have or duly register any deed under which plaintiffs could claim such 160 acres given to Stetson by Wirt Davis in 1940. Art. 5507 and Art. 5509, V.A.C.S.; Burton's Heirs v. Carroll (1903), 96 Tex. 320, 72 S.W. 581, opinion by Brown. Held on page 583:

"We conclude that the effect of limitation was to divest the naked legal title, which the plaintiffs in error had under the patent, out of them, and to vest it in the defendants in error, who held the equitable title; and the plaintiffs in error occupy just the same posi-

tion as if they had parted with their legal title by conveyance to the owners of the equitable title. They had no title to the land; therefore their three-years possession did not have the effect to bar the claim and right of the defendants in error."

As to the lands in controversy, Wirt Davis had disposed of his title thereto by giving such lands to Stetson in 1940. Those claiming under Wirt Davis, now deceased, could not use the title Wirt Davis theretofore had to acquire title under the three year statute of limitation or the five year statute of limitation. There can be but one regular chain of transfers from the sovereignty of the soil. When the holder of record title makes a conveyance of whatever title he had, such former owner no longer connects with the sovereignty of the soil. Grigsby v. May, 84 Tex. 240, 254, 19 S.W. 343; Burnham v. Hardy Oil Co., 108 Tex. 555, 195 S.W. 1139; Cagle v. Sabine Valley Timber & Lumber Co., 109 Tex. 178, 202 S.W. 942, 6 A.L.R. 1426, and cases cited therein. Points 3, 4 and 5 are overruled.

 Plaintiffs' Point 8 is as follows:

"Defendants and cross-plaintiffs, having wholly failed to meet their burden of proving the quantity, location and description of any land purportedly orally given to defendant Charley H. Stetson by Wirt Davis, deceased, in 1940, the trial court erred in directing the County Surveyor arbitrarily to select and survey out 160 acres and in entering judgment for defendants and cross-plaintiffs for the 160 acres of land so selected by the County Surveyor."

In our discussion of Points 6 and 7, it will be seen that the jury, by its answers, found that Wirt Davis in 1940 gave Charley Stetson 160 acres to include his improvements as though he had matured title by limitation under Art. 5510, V.A.C.S. In such cases, it is the duty of the court to order a survey and equitably set apart the improvements and the additional land needed to make 160 acres. Kirby Lumber Co. v. Conn, 114 Tex.

104, 263 S.W. 902; Wiggins v. Houston Oil Company of Texas, Tex.Civ.App., 203 S.W. 2d 252 (writ ref. n. r. e.).

Art. 5510, V.A.C.S., does not specifically authorize the District Court to segregate and partition the 160 acres, including the improvements out of a larger tract of land. The District Court is a court of general jurisdiction. The Supreme Court of Texas, in Kirby Lumber Co. v. Conn, supra, states the reasons why the District Court should order a survey and fairly partition the property. The power so to do is not of a statutory origin, but is authorized because a district court is a court of general jurisdiction, and, as the court having jurisdiction of land title suits, has such authority.

There is no difference in the meaning of the language of Art. 5510, V.A.C.S., providing the recovery of an adverse possessor "shall be construed to embrace not more than one hundred and sixty acres, including the improvements" and the meaning of the answer of the jury to Special Issue No. 2 finding that Davis gave Stetson "such enclosures plus sufficient additional acreage to aggregate 160 acres."

Since we are dealing with a description of land in this case with the same meaning as the description contained in Art. 5510, V.A.C.S., the District Court was authorized to appoint a surveyor and partition said 160 acres from the remainder of the larger tract, exactly as the District Court does in limitation suits. Louisiana & T. Lumber Co. v. Kennedy, 103 Tex. 297, 126 S.W. 1110, 1112.

Plaintiffs' Point 8 is overruled.

 Points 1 and 2 of appellants' brief (plaintiffs) are:

*Point One*

"As a matter of law, Defendants were estopped by the recitals of their tenancy agreements, as well as by their conduct, to deny the truth of such recitals and to assert a limitation title purportedly matured prior to

1947 or a parol gift purportedly made prior to 1947, and the trial court erred in refusing to so hold and in refusing to enter judgment for plaintiffs on their record title."

### Point Two

"Defendants and cross-plaintiffs are bound by the contractual recitals of the tenancy agreements of March 28, 1947, and of November 5, 1954, and are estopped to deny the truth thereof, since they neither sought to have such agreements canceled nor reformed in this suit, and same remain binding and in full force and effect, and the trial court erred in refusing to so hold and in refusing to enter judgment for plaintiffs on their record title."

At the time these instruments were made, Stetson had title to the lands in controversy for many years. The recitation in such instruments could only be considered by the jury in passing upon the question of whether the possession theretofore held by Stetson had been adverse, but same could have no other effect. Brown v. Fisher (Civ.App.), 193 S.W. 357–361 (writ ref.). As stated in Urschel v. Garcia, 164 S.W.2d 804 (Tex.Civ.App.1942, err. ref. w. o. m.), testimony disclaiming ownership if limitation title had already been perfected "could not be given effect to divest that title out of him. *This is elemental.*"

A disclaimer of ownership by person owning title, whether acquired by limitation or by conveyance, could not be given effect to divest title when such disclaimer was not of itself a conveyance.

After the gift by Wirt Davis to Stetson, Charley Stetson married his present and only wife, Velma Stetson. In 1940, and after such marriage, she, with her children, moved onto the lands in controversy to live with her husband, Charley Stetson. They have lived there ever since. It has been their home. All the elements of a homestead are present. Anyone looking at the photographs of the home in connec-

tion with the evidence would not believe any statement to the effect that it was not the homestead of Charley Stetson and wife, Velma. The undisputed evidence shows that, as a matter of law, part of this 160 acre recovery by Stetson was the homestead of Stetson and wife, even though some 109 acres of the Smiley Survey was designated, for tax purposes, as homestead property. A rural homestead is limited to 200 acres, which may be in one or more parcels with the improvements thereon. Art. 3833, V.A.C.S.

It has been universally held that the husband's conveyance of the homestead, in which the wife did not join, is ineffective until such homestead is abandoned. Art. 5510, V.A.C.S.; Southwestern Lumber Co. of New Jersey v. Evans, Tex.Civ.App., 275 S.W. 1078 (writ dism.). The 1947 instrument signed by Charley Stetson only was ineffective as a conveyance, did not purport to be a conveyance, and could not have the effect of conveying title by estoppel. The 1954 instrument signed by Mr. and Mrs. Stetson had no description of any land in the instrument at the time of signing. Plaintiffs do not claim it was a conveyance. The representations made to Stetson by plaintiffs' agents, Wilson and Richards, at the time each instrument was signed, were the subject of controversy. Stetson testified they were not supposed to deal with his lands. If Velma Stetson knew of the 1947 acknowledgment of tenancy and acquiesced therein, plaintiffs would not have secured any title thereby to her homestead under our laws, which forbid the sale of a homestead without the signature and privy acknowledgment of the wife. Further, plaintiffs could not mature title by limitation under any such instrument. Lumpkin v. Woods, Tex.Civ.App., 135 S.W. 1139 (writ ref.). Disregarding the question of homestead, the same conclusion would be obtained. Assuming that Stetson made false representations through the instruments of 1947 and 1954, no injury has occurred to innocent third parties. No one has acted or failed to act in full faith

and reliance on such representations to their injury.

When the jury found in favor of Stetson on his claim under the ten year statute of limitation, they considered all these recitals in the 1947 instrument. These recitals were contradicted by Stetson's testimony upon the trial. The jury weighed the recitals against Stetson's testimony upon the stand and found in favor of Stetson. This, the jury had a right to do. United States Fidelity & Guaranty Co. v. Carr, Tex.Civ.App., 242 S.W.2d 224 (writ ref.).

Since the 1947 and 1954 instruments were not conveyances, no necessity existed to procure cancellation or reformation of them as affidavits, as contended by plaintiffs. The jury had these instruments before it to consider. The jury disregarded such recitals.

Plaintiffs' Points 1 and 2 are overruled.

Judgment of trial court is affirmed.

## ON MOTION FOR REHEARING

In our original opinion, we stated the instrument of November 5, 1954, conveyed nothing, and that plaintiffs did not contend it did convey anything. In Paragraphs 14, 15, and 16, plaintiffs' (appellants) Motion for Rehearing, they contend that it was a conveyance, and that they had always so contended.

Richards was the Notary as well as the agent of plaintiffs in presenting this blank instrument to the Stetsons. He admitted he did not tell the Stetsons it was a deed, but instead represented to them that it was a tenancy agreement. Further, he admitted that no land was described in the instrument at the time Stetson and his wife signed it. Having obtained their signatures, Richards left the Stetsons. Later on and out of the presence of the Stetsons, Richards testified that he altered the instrument inserting everything written in pen and ink including the land descrip-

tion. Richards did not testify that the Stetsons authorized him to fill in such land description.

■ Stetson testified that at the time of signing the 1954 blank instrument, Richards represented that such instrument did not apply to Stetson's home place, the land involved here. Nothing in this record supports plaintiffs' assertion that the Stetsons authorized Richards to write in the description now found in such instrument dated November 5, 1954. Plaintiffs admitted that "the handwritten specific description was filled in subsequent to its execution".

"Grant, assign and convey," are words of conveyance. The printed portions of the instrument contain: "the undersigned does hereby grant, assign and convey all his right, title and interest in all lands owned or claimed by the undersigned lying within the boundaries of the tract above identified to the heirs and legal representatives of the estate of the late Wirt Davis." But when signed by the Stetsons, there was no "tract above identified" therein. The blank instrument did not even designate the county where the undescribed land was situated.

■ No authority is cited holding such an instrument under such facts conveys any property. If it had contained an adequate description when signed and properly acknowledged, it would have conveyed the "tract above identified". Houston Oil Company of Texas v. Moss, 155 Tex. 157, 284 S.W.2d 131 (1955). Since it described no land, it conveyed no land. Since Richards was not authorized to insert the description he inserted after the Stetsons signed, there was no question of fact to submit to a jury.

In Reserve Petroleum Co. v. Hodge, 147 Tex. 115, 213 S.W.2d 456, 7 A.L.R.2d 288 (1948), it was necessary to get a jury finding that a deed on printed form, when executed, contained no description of the

land before it could be held void. As it is undisputed that there was no description of the land in the 1954 blank instrument, there is no question of fact to be determined by a jury. Also, it is undisputed that Richards was not verbally authorized by the Stetsons thereafter to insert a description, if indeed he could have been validly authorized so to do. So, the holding in Reserve Petroleum Co. v. Hodge, supra, applicable here is: "Because they contained no description of the land the two mineral deeds, when delivered, were inoperative, * * *." There being no ratification of this 1954 blank instrument by the Stetsons, and the Stetsons not having abandoned their homestead, the other holdings in Reserve Petroleum Co. v. Hodge, supra, are not applicable.

The principle applicable to this 1954 paper is well stated in Miller v. Alexander, 13 Tex. 497 (1855):

"If on the production of such instrument it appears to have been altered, it is incumbent on the party offering it in evidence to explain this appearance. For the instrument is supposed to have been intended to express the agreement of the parties, solemnly adopted as such, and attested by the signature of the party engaging to perform it. Any alteration, therefore, which makes it speak a language different in effect from that which it originally spoke destroys its identity and its legal virtue, for it is no longer the agreement which the parties undertook to perform.

"An agreement to be binding must have the assent of both of the contracting parties; and, consequently, cannot have legal validity if altered by one party without the concurrence of the other. Hence, every alteration on the face of the instrument which evidences the agreement renders it suspicious; and this suspicion the party claiming under it, is ordinarily held bound to remove. * * *"

This suspicion was not removed by plaintiffs.

Murphy v. Bain, 142 S.W.2d 598, 601 (Tex.Civ.App.), concurs with the above in this language:

"In 2 Am.Jur. 608, para. 16, the author says: 'A material alteration of an instrument by a party thereto will vitiate it, though made with no fraudulent intent whatever and with an entirely honest motive. The law holds the instrument void not because the thing done is actual fraud, but because a contrary rule would open the door for fraud, and because the alteration changes the legal identity of the paper and causes it to speak a language differing in legal effect from that which it originally spoke.'

"See also 2 Tex.Jur. page 963, para. 3, page 702, para. 11.

"This assignment we sustain."

For other authorities holding that such an instrument is void, see Southern Pine Lumber Co. v. Arnold, Tex.Civ.App., 139 S.W. 917, 922 (n. w. h.); Lowe v. Henson, Tex.Civ.App., 190 S.W.2d 423, 426 (n. w. h.). On page 426 of Lowe v. Henson, supra, it was held:

"We also agree with the trial court's conclusion of law. The material alteration of a written instrument made by one of the parties to it after execution and without the authority or consent of another party to it avoids the instrument as to the nonconsenting party. Baldwin v. Haskell Nat. Bank, 104 Tex. 122, 133 S.W. 864, 134 S.W. 1178; Matson v. Jarvis, 63 Tex.Civ.App. 376, 133 S.W. 941, writ of error refused; Pope v. Taliaferro, 51 Tex.Civ.App. 217, 115 S.W. 309."

The material alteration of the instrument made by plaintiffs' agent after being signed by defendants was without the authority or consent of defendants. So it is void.

The foregoing disposes of all arguments plaintiffs have presented in their Motion for Rehearing in a different manner than in their original presentation.

Proper disposition was made of this suit in the original opinion. The Motion for Rehearing is overruled. Motion for oral argument is refused.