John T. AMEND and Teresa
A. Amend, Appellants,

v.

Jim WATSON and Kay
Watson, Appellees.

No. 05–08–01585–CV.

Court of Appeals of Texas,
Dallas.

July 6, 2009.

John L. Turner, Jr., G. Michael Gruber, Brian N. Hail, Gruber Hurst Johansen & Hail LLP, Dallas, TX, for Appellant.

Monica Wiseman Latin, Carrington, Coleman, Sloman, & Blumenthal, L.L.P., Dallas, TX, for Appellee.

Before Justices MORRIS, RICHTER, and LANG–MIERS.

## OPINION

Opinion By Justice LANG–MIERS.

This is an accelerated appeal from the trial court's interlocutory order denying the Amends' request for a temporary injunction in their trespass suit against the Watsons. We affirm the trial court's order.

### BACKGROUND

In 1953, the owner of a 2.424–acre property near White Rock Lake, the William Herbert Hunt Trust, granted the City of Dallas an easement across the side of the property "for the purpose of constructing and maintaining a city sanitary sewer main." The easement has not been used, and the property it encumbers is now vacant and belongs to the Amends.

The Watsons own the property behind the Amends' property.[1] The Watsons want to discontinue use of the existing

---

1. Kay Watson is the record title owner of the property. Jim Watson is her husband.

septic tank on their property, so they approached the City about connecting their property to the City sewer system. The City told the Watsons that it was not feasible to connect their property directly to the City sewer without installing a sewer main through one of the neighboring properties. The Watsons approached multiple owners of neighboring properties, including the Amends, and offered to purchase a sewer easement across their properties; but none of the neighbors agreed to grant the Watsons an easement. The City then told the Watsons about the City's existing easement across the Amend's property and offered to let the Watsons use it. The Watsons agreed to hire a contractor, pay the contractor to install a sewer main within the City's easement connecting the Watsons' property to the existing sewer main in front of the Amends' property, and deed it to the City. The City agreed to reimburse the Watsons for up to thirty percent of the installation costs.

The Amends filed a trespass suit against the Watsons claiming that the installation of the sewer main would constitute a trespass. The Amends sought a temporary restraining order, a temporary injunction, and a permanent injunction preventing the Watsons from installing the sewer main. The trial court granted a temporary restraining order and held a hearing on the application for temporary injunction. After the hearing, the trial court signed an order denying the application for temporary injunction.

### Temporary Injunctions and Standard of Review

■ The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex.2002). A temporary injunction is an extraordinary remedy and will not issue as a matter of

right. *Id.* To obtain a temporary injunction, an applicant must plead and prove: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id.*

■ The decision to grant or deny a temporary injunction is within the trial court's sound discretion, and that decision can be reversed on appeal only if we are convinced that it represents a clear abuse of discretion. *Id.; In re Marriage of Beach*, 97 S.W.3d 706, 708 (Tex.App.-Dallas 2003, no pet.). When we review a trial court's order on an application for temporary injunction, we cannot substitute our judgment for that of the trial court, even if we would have reached a contrary conclusion. *Greenpeace, Inc. v. Exxon Mobil Corp.*, 133 S.W.3d 804, 808 (Tex.App.-Dallas 2004, pet. denied) (citing *Butnaru*, 84 S.W.3d at 211). Instead, we view the evidence in the light most favorable to the trial court's order, indulging every reasonable inference in its favor, and determine whether the order is so arbitrary that it exceeds the bounds of reasonable discretion. *Bartoo v. Dallas Area Rapid Transit*, No. 05–02–00828–CV, 2003 WL 751812, at *2 (Tex.App.-Dallas March 6, 2003, no pet.) (mem. op.); *IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 196 (Tex.App.-Fort Worth 2005, no pet.). A trial court does not abuse its discretion by denying an application for temporary injunction if the applicant did not prove one of the requirements for a temporary injunction. *Matrix Network, Inc. v. Ginn*, 211 S.W.3d 944, 947 (Tex.App.-Dallas 2007, no pet.).

### Analysis

■ The Amends argue that they were entitled to a temporary injunction because the easement and the City code do not allow the Watsons to use the City's

sewer easement to install a sewer main.[2] More specifically, they argue that the provision in the easement stating that "[a]ll expenses in the construction and maintenance of said sanitary sewer shall be at the sole expense of the City of Dallas" does not allow the Watsons to pay a contractor to install the sewer main in the City's easement, even with the City's permission. The Amends also argue that the Watsons cannot use the City's easement because "nothing in the Easement permits the City to assign its rights and obligations to private citizens seeking to obtain a personal benefit." Alternatively, the Amends argue that the Watsons are not allowed to use the City's easement because they do not qualify as "developers" as that term is defined in the City code.

In response, the Watsons disagree with the Amends' interpretation of the language in the easement and in the City code. And because the Watsons contend that the easement and the City code permit them to contract and pay for installation of the sewer main, they argue that the trial court did not abuse its discretion in denying a temporary injunction because it could have reasonably concluded that the Amends did not meet their burden to demonstrate a probable right to recovery. Alternatively, the Watsons argue that the trial court did not abuse its discretion because it could have reasonably concluded that the Amends did not meet their burden to demonstrate a probable, imminent, and irreparable injury. In reply, the Amends argue that a temporary injunction is required to preserve the status quo in this case because there is "no question that the Watsons are seeking to permanently and irreversibly change the Amend Property by constructing a 422–foot long wastewater main under it."

■ We address the parties' competing arguments about irreparable injury first because we cannot reverse an order denying a temporary injunction if an applicant did not prove a probable, imminent, and irreparable injury. *See Matrix*, 211 S.W.3d at 948 (affirming denial of temporary injunction because applicant "failed to establish that it faced probable, imminent, and irreparable injury"); *see generally Butnaru*, 84 S.W.3d at 204 (applicant must prove probable, imminent, and irreparable injury in order to be entitled to temporary injunction); *Kent–Anderson Concrete, L.P. v. Nailling*, No. 02–07–00008–CV, 2007 WL 2150213, at *3 (Tex.App.-Fort Worth July 26, 2007, no pet.) (mem. op.) (citing rule of appellate procedure 47.1 and analyzing "evidence of probable, imminent, and irreparable injury" first).

---

**2.** The Amends cite numerous statements made by the trial court during the temporary injunction hearing and argue that the trial court misconstrued language in the easement and in the City code as a matter of law. However, a judge's statements during a hearing do not constitute written findings and conclusions, and do not limit the grounds upon which an order can be upheld on appeal. *See Larry F. Smith, Inc. v. Weber Co.*, 110 S.W.3d 611, 615 (Tex.App.-Dallas 2003, pet. denied). And when no findings of fact or conclusions of law have been requested or filed, as in this case, we must uphold an order granting or denying a temporary injunction on any legal theory supported by the record. *Tom James of Dallas, Inc. v. Cobb*, 109 S.W.3d 877, 884 (Tex.App.-Dallas 2003, no pet.). Additionally, the Amends' argument focuses on the merits of the underlying trespass claim; but we cannot reverse an interlocutory order granting or denying a temporary injunction based solely on the merits of the underlying claim. *See Davis v. Huey*, 571 S.W.2d 859, 861 (Tex.1978) (in appeal from interlocutory order on application for temporary injunction, "the merits of the underlying case are not presented for appellate review"). Instead, our review is "strictly limited to determination of whether there has been a clear abuse of discretion by the trial court in granting or denying the interlocutory order." *Id.* at 862.

The Amends argue that the installation of the sewer main by the Watsons, as opposed to the City, would constitute a trespass because the Watsons do not have the Amends' permission to enter their property. And the Amends contend that any trespass, as a matter of law, constitutes irreparable injury. To support their argument, the Amends rely on *Cargill v. Buie*, 343 S.W.2d 746 (Tex.Civ.App.-Texarkana 1960, writ ref'd n.r.e.), in which the appellate court affirmed the trial court's order granting a temporary injunction in a dispute over title to a railroad right-of-way. The plaintiff in that case, Buie, claimed title to a 215–acre property that had an abandoned railroad track running through the middle of it. The property was enclosed by a barbed-wire fence and was used to graze cattle. The defendant, Cargill, claimed to own title to the railroad right-of-way running through the property. Shortly before the lawsuit was filed, Cargill's representative cut through the barbed-wire fence, entered onto Buie's property, and prepared to drill an oil well in the railroad right-of-way. Cargill began to prepare the drill site by clearing trees and underbrush and leveling the ground. Cargill also moved surface soil and destroyed grass and vegetation to make way for drilling equipment. Buie sought a temporary injunction, and after a hearing in which both sides claimed to own title to the railroad right-of-way, the trial court issued a temporary injunction restraining Cargill and his employees from entering onto the property and continuing drilling activities.

*Cargill* is distinguishable from this case because Buie submitted uncontroverted evidence that his property (1) had already suffered actual injury, and (2) was facing imminent depletion of the subsurface mineral resources. Moreover, *Cargill* does not stand for the proposition that an applicant seeking a temporary injunction in a trespass suit is not required to submit evidence to demonstrate irreparable injury, nor does it stand for the proposition that every trespass on land constitutes irreparable injury as a matter of law. We also note that at least one of our sister courts has rejected the similar proposition "that the simple fact that real property is involved mandates injunctive relief" without a showing of irreparable injury. *Parks v. U.S. Home Corp.*, 652 S.W.2d 479, 485 (Tex.App.-Houston [1st Dist.] 1983, writ dism'd).

Similarly, we decline to hold that every trespass constitutes irreparable injury as a matter of law. Instead, applying well-settled Texas law, we conclude that the Amends were required to submit evidence to demonstrate a probable, imminent, and irreparable injury. *Butnaru*, 84 S.W.3d at 204; *Matrix*, 211 S.W.3d at 948. An injury is irreparable if damages would not adequately compensate the injured party or if they cannot be measured by any certain pecuniary standard. *Butnaru*, 84 S.W.3d at 204.

In this case, the Amends pleaded as follows in their petition and application for temporary restraining order and temporary and permanent injunctive relief:

> Unless enjoined, [the Watsons] will be in a position to commence and will probably commence construction of the wastewater main, thereby causing permanent, irreparable harm to [the Amends'] land. If a temporary [injunction] is not immediately issued by the Court, [the Amends] will be without an adequate remedy at law and will suffer immediate and irreparable harm given the fact that [the Amends] are in immediate danger of having their realty altered in a manner that cannot be undone.
>
> . . .
>
> If such relief is not granted, [the Amends] will suffer irreparable harm

before a trial on the merits of this case can be conducted.

Although the Amends generally argued to the trial court that trees could be killed or that the sewer main could leak, "fear and apprehension of injury are not sufficient to support a temporary injunction." *Matrix*, 211 S.W.3d at 947–48. And there was testimony to the contrary.[3] Without evidence of a probable, imminent, and irreparable injury, we cannot conclude that the trial court abused its discretion when it denied the temporary injunction. *See Matrix*, 211 S.W.3d at 948.[4] Consequently, based on the record in this case, at least some basis exists on which the trial court could have properly concluded that the Amends were not entitled to a temporary injunction pending final hearing.

We do not address the parties' competing arguments concerning the proper interpretation of the easement and the City code because our conclusion about the merits of the underlying trespass claim would not affect the disposition of this appeal. TEX.R.APP. P. 47.1; *see also See Davis v. Huey*, 571 S.W.2d 859, 861–63 (Tex.1978) (when trial court's decision to deny temporary injunction could have been based on multiple grounds, including lack of evidence of irreparable injury, intermediate appellate court exceeded proper scope of appellate review by "intruding upon the merits of the underlying cause of action").

### CONCLUSION

In summary, viewing the evidence in the light most favorable to the trial court's order, we cannot conclude that the trial court abused its discretion in denying the Amends' application for temporary injunction. Consequently, we affirm the trial court's order denying the Amends' application for temporary injunction.[5]

---

**3.** During his testimony, Jim Watson testified that there are two trees within the City's easement. He testified that to prevent any damage to the trees or surface of the Amends' land, the Watsons agreed to pay a higher price for directional boring, as opposed to digging a trench through the surface of the easement. Directional boring will bore the hole for the sewer line seven or eight feet underground starting on the Watsons' property, so that the hole for the eight-inch sewer line can be installed in the City's easement without affecting the root systems of the Amends' trees. Robert Edwin Farrow, the owner and president of Saber Development, the Watsons' contractor, testified that the City has signed off on the installation plans, inspected the job site, and given its final written approval for the installation. He also testified that he has done fifty or sixty projects that involved boring for utilities, as opposed to trenching. He has bored under trees and has never had a complaint about injury to a tree.

**4.** Moreover, in exercising its discretion, the trial court was required "to take into account other considerations evident on the face of the pleadings and in the evidence adduced at the temporary-injunction hearing—for example, the issue of comparative injury or a balancing of the 'equities' and hardships, including a consideration of the important factor of the public interest." *Methodist Hosps. of Dallas v. Tex. Indus. Accident Bd.*, 798 S.W.2d 651, 660 (Tex.App.-Austin 1990, writ dism'd w.o.j.); *see also Computek Computer & Office Supplies, Inc. v. Walton*, 156 S.W.3d 217, 220 (Tex.App.-Dallas 2005, no pet.) ("Because an injunction is an equitable remedy, a trial court weighs the respective conveniences and hardships of the parties and balances the equities."). In this case, the trial court could also have reasonably concluded that a balancing of the equities and hardships, including the public interest, weighs in favor of the Watsons.

**5.** The Amends also filed a separate, unopposed petition for writ of injunction, seeking to preserve this Court's jurisdiction over the subject matter of the dispute pending disposition of this interlocutory appeal. In response, we ordered the original proceeding, this

Court's cause number 05–08–01617–CV, consolidated with and into this cause and issued a writ of injunction enjoining the Watsons from beginning installation of the sewer main pending disposition of this interlocutory appeal. *In re Amend,* No. 05–08–01617–CV, 2009 WL 18718 (Tex.App.-Dallas Jan. 5, 2009, orig. proceeding) (mem. op.). In accordance with this opinion, we are issuing an order dissolving the writ of injunction.