COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-09-267-CV

 

 

LIFEGUARD
BENEFIT SERVICES,                                          APPELLANTS

INC. AND THE AMACORE

GROUP, INC.

 

                                                   V.

 

DIRECT
MEDICAL NETWORK                                                  APPELLEES

SOLUTIONS, INC. AND

CONSUMER ASSISTANCE

SERVICES ASSOCIATION

 

                                              ------------

 

           FROM THE 153RD
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.  Introduction








Appellants Lifeguard Benefit Services, Inc. and
The Amacore Group, Inc. bring this accelerated, interlocutory appeal from the
imposition of a temporary injunction (1) enjoining Appellants from denying
Appellees Direct Medical Network Solutions, Inc. (ADirectMed@) and
Consumer Assistance Services Association (ACASA@) access
to and possession of data and information regarding Appellees= members
and customers, (2) requiring Appellants to turn over to Appellees data and
information regarding Appellees= members
and customers, and (3) requiring Appellants to turn over to a third party data
and information regarding individuals whom Appellants contend are their
customers only.  In one issue, divided
into three subissues, Appellants argue that the trial court abused its
discretion by entering the injunction because Appellees did not demonstrate an
extreme hardship and prove an imminent threat of irreparable harm, the
injunction alters the status quo and provides Appellees the ultimate relief
sought in the suit, and the order granting the injunction is vague and overly
broad.  We will modify the temporary
injunction and affirm it as modified.

II.  Factual and Procedural Background

Ty Bruggemann founded CASA, DirectMed, and
Lifeguard.  Bruggemann is the president
of CASA and DirectMed.  Lifeguard merged
with Amacore in 2007; Amacore is Lifeguard=s parent
company.  Lifeguard terminated Bruggemann=s
employment in 2008.








CASA is a not-for-profit association organized
under the laws of the State of Illinois. 
Consumers who purchase a membership in CASA qualify to purchase benefit
plans marketed by DirectMed and other retailers.  DirectMed is a corporation organized under
the laws of the State of Delaware.  It is
a third-party retailer of health and lifestyle benefit plans that provides its
members discounts on medical services and lifestyle benefits.  All DirectMed customers are members of CASA,
but all CASA members are not customers of DirectMed; CASA members qualify to
purchase plans from retailers other than DirectMed.  CASA has approximately 10,000 members, Aover 35%
of which have purchased DirectMed plans.@

Lifeguard engages in a number of business
activities, including packaging lifestyle and benefit plans that are sold
through third-party marketers and providing back-office administrative services
for private label clients like DirectMed. 
The back-office support includes managing customer accounts.








Lifeguard contracted with CASA to sell CASA
memberships and to provide CASA with back-office administrative support.  Lifeguard=s
packages do not always include CASA benefits. 
Lifeguard also entered into an agreement with DirectMed to market and
service DirectMed=s products.  According to Appellees=
original petition, the agreements between Lifeguard and CASA and between
Lifeguard and DirectMed are the only reason that Lifeguard and Amacore have
possession of data concerning DirectMed=s and
CASA=s
members.  According to Bruggemann, AUnder
the Contracts between Lifeguard and DirectMed and CASA, the data concerning its
members, their claims, and benefits belongs to DirectMed and CASA.@

On or about June 24 or 25, 2009, DirectMed
received a Civil Investigative Demand (ACID@) from
the Office of the Attorney General of the State of Minnesota.  The CID states in part that Athe
Attorney General has received complaints alleging that Direct Medical Network
Solutions, Inc. engages in deceptive and fraudulent misrepresentations in the
sale of its services to Minnesota consumers, in violation of Minnesota law.@  It also required DirectMed to answer
interrogatories and to deliver documents requested for production.

On June 24, 2009, Scott Smith, Amacore=s chief
operating officer and Lifeguard=s
operations officer, notified Bruggemann that effective immediately, all
DirectMed data could be accessed via a web-based portal to Lifeguard=s
software system referred to as L.I.S.A. (Lifeguard Integrated Software
Application).[1]  According to Appellees, the data that
DirectMed was able to access through the portal was Avery
limited@ and
insufficient to fully respond to the CID.








On June 25, 2009, Bruggemann requested that he be
given access to all of the DirectMed and CASA data and records under the
control of Lifeguard and Amacore.[2]  Several DirectMed representatives visited
Lifeguard=s offices the next day but were
told that the data was not ready.  On
June 30, 2009, Smith responded to Bruggemann=s
request and said that the agreements between Lifeguard and DirectMed and
between Lifeguard and CASA Agovern
the data, materials, etc. to which you are entitled@; that
DirectMed has access Ato a wide range of data through
the web portal access provided to you by Lifeguard@; that
Lifeguard was assembling the requested data and information; and that ALifeguard
is committed to assisting in any way possible and practicable to help meet the
requests of the@ Minnesota Attorney
General.  Smith also indicated that A[to the
extent we determine that we are not contractually required to produce one or
more categories of requested documents, we will notify you of the basis for our
objection.@








On July 1, 2009, Bruggemann sent Smith an
itemized list of information that DirectMed was requesting from Lifeguard.  Lifeguard responded to the data request a few
days later, providing responses to the requests, objecting to certain requests,
and stating that Lifeguard will produce certain documents.  In an attached letter, Lifeguard indicated
that some of DirectMed=s requests exceeded the scope of
the information requested by the CID and that much of the information requested
is Areadily
available@ to Bruggemann and Aentirely
under [his] control as the President of DirectMed and through . . . access to
the LISA system.@ 
At the hearing on Appellees= motion
for the temporary injunction, when asked about Lifeguard=s
response to DirectMed=s request for information,
Bruggemann testified that Lifeguard refused to provide the data and information
that DirectMed was seeking pursuant to the information request.

Appellees filed their original petition and
application for a temporary restraining order and injunctive relief on July 9,
2009.  They alleged that Lifeguard
provides back-office administrative support for each of them, that Lifeguard
maintains possession of all of the data and information concerning their
members and customers, that they had demanded full access to all of their
customer and member data being held by Lifeguard in order to prepare responses
to the CID, and that Appellants had refused to turn over the member and
customer data and information.  In
addition to seeking injunctive relief, Appellants alleged claims for a
declaratory judgment, breach of contract, and conversion.








On July 10, 2009, Appellants and Appellees
entered into a rule 11 agreement providing in part as follows:

$Appellants shall provide
Appellees possession of and unfettered access to all data, information, and
records regarding DirectMed and CASA members in their health and wellness plan
and their full access to all data which is Appellants.

 

$Appellees will provide
today a record layout for the data, records, and information to be transferred
to it.  Appellants will transfer all
data, records, and information concerning all DirectMed customers and CASA members
to Appellees within twenty-four hours unless that time frame is impracticable.

 

$Appellants shall continue
providing Appellees all electronic data, information, and records concerning
customers or members of DirectMed and CASA on a daily basis to the extent
practical.  The transfer shall be
accomplished by transferring the data through an FTP site and then a record
layout to be identified by Appellees.

 








The trial court held a hearing on Appellees=
application for a temporary injunction on July 23, 2009.  Williams, who was DirectMed=s
liaison to Lifeguard, testified about the events that transpired relevant to
the rule 11 agreement after its entry. 
He recalled that Appellees had agreed to use a record layout provided by
Appellants but that the layout they provided was incomplete and not Aall-inclusive.@[3]  Also, Lifeguard provided Appellants with data
on a memory stick instead of transferring the data by way of an FTP site.  According to Williams, the data transferred
was incomplete and unusable.  Williams
met with Smith and eventually reached an agreement on a record layout to provide
the data and information that Appellees were requesting, but Appellants have
not provided Appellees with a subsequent Adata
dump.@  Williams visited Lifeguard=s
offices and was given an opportunity to look through and take information that
was provided to him.  Williams opined
that Appellees have only approximately 20% of the data and information that
they have demanded.








Smith testified that the record layout to be used
to transfer the data has changed several times and that Lifeguard is in the
process of furnishing DirectMed and CASA their data.  He agreed that DirectMed and CASA are
entitled to all of the data and information that belong to them, but he testified
that Lifeguard has possession of a large amount of data and information that does
not belong to DirectMed and CASA, and he expressed concern about who should
and who should not be considered a member of CASA.  One such example of Lifeguard=s
disagreement with DirectMed over who should be considered a member of CASA
concerned those who are members or customers of the Lifeguard Health Options
program.  Williams testified that
Lifeguard was selling memberships in CASA through the Lifeguard Health Options
program, and he discussed a fulfillment materials package for Lifeguard Health
Options that members receive, which includes a reference that Lifeguard Health
Options is a product provided through CASA. 
Smith, on the other hand, denied that those who are members of the
Lifeguard Health Options program are also members of CASA.[4]  Smith testified that Lifeguard does not want
to turn over to DirectMed and CASA data concerning the members of the Lifeguard
Health Options program because DirectMed and CASA could then effectively divert
the billing of those contracts away from Lifeguard, resulting in Lifeguard
losing money.

The trial court granted Appellees= request
for a temporary injunction and found as follows:








Unless Defendants Lifeguard Benefit Services, Inc. and The Amacore
Group, Inc., together with their agents, servants, employees and those acting
in concert with them are immediately enjoined, Plaintiffs will suffer immediate
and irreparable injury and extreme hardship for which there is no adequate
remedy at law.  In part, the Court finds
that absent a temporary injunction, (1) Plaintiffs will be denied
possession of the data, information and records regarding [DirectMed] and
[CASA] members to which they have the right of possession[;]
(2) Plaintiffs will not be able to properly respond to the Minnesota
Attorney General=s [CID] or other
investigations; (3) Plaintiffs will not be able to properly prepare and
defend itself in connection with such investigations; (4) Plaintiff=s failure to prepare and
respond adequately to any investigations or actions by Defendants would create
grounds for further action against them, could affect the nature of the
investigation, potentially expose Plaintiffs and/or its officers to charges
being initiated, and impact their goodwill, business, client relationships,
reputation in the business community, and ability to compete on a level playing
field in the industry; (5) any charges arising from the failure to respond
to any investigation or complaint would cause Plaintiffs immediate irreparable
harm and damage through the loss of customers, damage to its relationships with
clients, benefit providers, vendors, loss of good will, and the permanent
injury to Plaintiffs= business reputation; (6)
failing to have possession of the data, information, and records concerning all
of its customers[>] and members[>] records would injure
their ability to service and direct service of those customers and members and
their benefits and to investigate and evaluate the services being provided to
those customers and members[.]

 

The trial court ordered as follows:

1)     That [Lifeguard]
and [Amacore] . . . are hereby enjoined from denying
Plaintiffs . . . from having immediate possession of and
unfettered access to all data, information and records, regarding DirectMed and
CASA members, excluding AContested CASA Members@ as hereafter defined;

 

2)     Defendants
shall, on or before 5:00 P.M. on August 17, 2009, transfer an external hard
drive devise to be provided by Plaintiffs, and to deliver to Plaintiffs, all
data, information and records including but not limited to credit card and bank
information, regarding DirectMed and CASA members, excluding Contested CASA
Members, in the record layout format attached to this Order as Appendix A.

 








3)     Defendants
shall on or before 5:00 P.M. on August 17, 2009 transfer to an independent
third party vendor mutually selected by the parties by use of an external hard
drive devise to be provided by Plaintiffs file all data, information and
records regarding Contested CASA Members in the same record layout format as
that specified in the preceding paragraph. 
If the parties are unable to mutually [select] a third party vendor by 5
P.M. on August 10, 2009, then the court appoints Edwin Bell to act as the third
party vendor and authorizes Edwin Bell to hire and obtain such services as may
be necessary.

 

4)     Defendants
shall update the transfers referred to in Paragraphs 2 and 3 hereof on a daily
basis by use of an SFTP site designated by Plaintiffs.

 

5)     The
term AContested CASA Members@ shall mean those members
and participants in plans offered or administered by the Defendants whose plan
documents reference, mention, or allude to [CASA] in any manner but whom
Defendants assert are not DirectMed customers or CASA Members.

 

6)     The
third party vendor selected to receive the data, information and records
regarding Contested CASA Members as set forth in Paragraph 3 above shall hold
and maintain the data, information and records transmitted to it in accordance
with this Order and shall permit the parties to this litigation access to the
data, information, and records to verify compliance with the orders of this
Court but shall not permit copying of the data except as further ordered by the
Court.

 

7)     The
third party vendor shall not permit dissemination of the data, information and
records except as set forth above and subject to further order of the Court.

 

8)     Use
of data, information, and records transmitted to the third party vendor shall
be for litigation purposes only unless and until further order of the Court.

 

9)     The
cost of the third party vendor shall be shared equally by the parties hereto.








10)   The
Defendants, their agents, servants and employees shall within twenty-four (24)
hours of receipt of any inquiry, investigative demand, or like communication
received by Defendants regarding the Plaintiffs, their members or any plan
offered by the Plaintiffs forward the same to Plaintiffs.

 

11)   The
Defendants shall be enjoined from engaging in any responses or communications
with the Minnesota Attorney General or any other investigative unit purportedly
on Plaintiffs= behalf.

 

III.  Standard of Review

The purpose of a temporary injunction is to
preserve the status quo of the litigation=s
subject matter pending a trial on the merits. 
Butnaru v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002).  A
temporary injunction is an extraordinary remedy and will not issue as a matter
of right.  Id.  To obtain a temporary injunction, an
applicant must plead and prove: 
(1) a cause of action against the defendant; (2) a probable
right to the relief sought; and (3) a probable, imminent, and irreparable
injury in the interim.  Id.; Frequent
Flyer Depot, Inc. v. Am. Airlines, Inc., 281 S.W.3d 215, 220 (Tex. App.CFort
Worth 2009, pet. denied).








In an appeal from an order granting or denying a
temporary injunction, the scope of review is restricted to the validity of the
order granting or denying relief.  Argyle
ISD ex rel. Bd. of Trustees v. Wolf, 234 S.W.3d 229, 237 (Tex. App.CFort
Worth 2007, no pet.).  Whether to grant
or deny a request for a temporary injunction is within the trial court=s
discretion, and we will not reverse its decision absent an abuse of
discretion.  Butnaru, 84 S.W.3d at
204.  Under an abuse of discretion
standard, the court of appeals cannot overrule the trial court=s
decision unless the trial court acted unreasonably or in an arbitrary manner,
without reference to guiding rules and principles.  Id. at 211.  A trial court does not abuse its discretion
if some evidence reasonably supports the trial court=s
decision.  Id.  When reviewing a trial court=s order
on an application for temporary injunction, we cannot substitute our judgment
for that of the trial court, even if we would have reached a contrary
conclusion.  Greenpeace, Inc. v. Exxon
Mobil Corp., 133 S.W.3d 804, 808 (Tex. App.CDallas
2004, pet. denied).  Instead, we view the
evidence in the light most favorable to the trial court=s order,
indulging every reasonable inference in its favor, and determine whether the
order is so arbitrary that it exceeds the bounds of reasonable discretion.  Amend v. Watson, No. 05-08-01585-CV, 2009
WL 1912693, *1 (Tex. App.CDallas July 6, 2009, no pet.).

IV.  Irreparable Injury

In the first subissue of their only issue,
Appellants argue that the trial court abused its discretion by entering the
temporary injunction because Appellees failed to introduce clear and compelling
evidence of an extreme hardship and failed to prove an imminent threat of
irreparable harm.








The party seeking injunctive relief bears the
burden to demonstrate irreparable injury. 
N. Cypress Med. Ctr. Operating Co., Ltd. v. St. Laurent, 296
S.W.3d 171, 175 (Tex. App.CHouston
[14th Dist.] 2009, no pet.); Marketshare Telecom, L.L.C. v. Ericsson, Inc.,
198 S.W.3d 908, 925 (Tex. App.CDallas
2006, no pet.) (AA trial court abuses its
discretion in granting a temporary injunction unless >it is
clearly established by the facts that one seeking such relief is threatened
with an actual irreparable injury if the injunction is not granted.=@).  A party proves irreparable injury for
injunction purposes by proving that damages would not adequately compensate the
injured party or cannot be measured by any certain pecuniary standard.  Butnaru, 84 S.W.3d at 204; Frequent
Flyer Depot, 281 S.W.3d at 227. 
Damages are an inadequate remedy if they are difficult to calculate; Aassigning
a dollar amount to such intangibles as a company=s loss
of clientele, goodwill, marketing techniques, and office stability, among
others, is not easy.@ 
Frequent Flyer Depot, 281 S.W.3d at 228B29.  But an injunction is not proper when the
claimed injury is merely speculative.  Id.
at 227.

A.     Mandatory
or Prohibitive Injunction








Appellants initially contend that the injunction
is mandatory both as to the AContested
CASA Members@ and the DirectMed and
non-contested CASA members because the injunction=s
paragraph 2 requires Appellants to transfer to Appellees data and information
regarding DirectMed and CASA Members, excluding AContested
CASA Members,@ and paragraph 3 requires
Appellants to act by affirmatively transferring records relating to Contested
CASA Members to a third-party vendor.  A
prohibitive injunction forbids conduct, and a mandatory injunction requires
it.  RP&R, Inc. v. Territo, 32
S.W.3d 396, 400 (Tex. App.CHouston
[14th Dist.] 2000, no pet.).  A mandatory
injunction is proper when necessary to prevent irreparable injury and extreme
hardship.  Iranian Muslim Org. v. City
of San Antonio, 615 S.W.2d 202, 208 (Tex. 1981).  Appellees concede that the injunction can be
viewed as either prohibitiveCbecause
it requires that traditionally provided data continue to be transferredCor
mandatoryCbecause it requires Appellants
to provide data and information.

B.     DirectMed








DirectMed pleaded that it will suffer immediate,
irreparable injury in the absence of a temporary injunction because it will not
be able to respond, prepare, and defend itself in regard to the CID and because
any future investigation or charges would Aundoubtedly
cause [it] potential harm and damage through the loss of customers, loss of
good will, and the permanent injury to [its] business reputation due to the
implicit belief of wrongdoing.@  DirectMed further pleaded that its potential
damages attributable to Appellants= refusal
to turn over the demanded data and information cannot be calculated and that it
will suffer irreparable injury because Appellants= conduct
will subject them to potential civil or criminal liability and jeopardize their
business reputation and their relationship with their customers.

At the hearing on DirectMed=s
application for a temporary injunction, DirectMed introduced evidence that the
Office of the Attorney General for the State of Minnesota had issued the
CID.  The CID indicates that Minnesota=s
Attorney General has received complaints alleging that DirectMed engages in
deceptive and fraudulent misrepresentations in the sale of its services to
Minnesota consumers in violation of Minnesota law.  The CID also propounds interrogatories,
requests the production of documents, and requires DirectMed to respond to the
interrogatories within twenty days of the service of the CID and to respond to
the requests for production within fifteen days of service of the CID.








Bruggemann testified that DirectMed needs access
to its data held by Lifeguard in order to fully and properly respond to the
Minnesota CID.  Williams testified that
it is important to have DirectMed=s data
so that it can properly respond to the CID, and he opined that having only part
of the data that it has demanded could interfere with its ability to defend
itself against claims of fraudulent misrepresentation and deceptive trade
practices with consumers.  Bruggemann
testified that the data DirectMed was able to access from the L.I.S.A. system
through the web-based portal was insufficient to fully respond to the CID, and
Williams thought that Appellees have only approximately 20% of the data and
information that they have demanded from Appellants.  In the absence of a response complying with
the CID, the Minnesota Attorney General may apply to a court for an order
compelling compliance in accordance with Minnesota law and, consistent with the
trial court=s order, Bruggemann testified
that he was concerned about DirectMed=s
potential loss of goodwill, loss of reputation in the industry, and loss of
customers.

The evidence thus demonstrates that DirectMed
cannot fully and properly respond to the CID without the data and information
that Lifeguard possesses.  DirectMed has
a remedy for damages against Lifeguard for breach of contract, but the damages
resulting from Lifeguard=s failure to abide by the terms
of its agreement with DirectMed would be difficult to determine or calculate
and, consequently, inadequate because DirectMed is threatened with the
Minnesota Attorney General=s
pursuit of remedies it deems necessary against DirectMed and the potential
resulting adverse impact on DirectMed=s
reputation, business goodwill, and customer base.








Underlying Appellants=
argument is the contention that DirectMed=s
claimed injury is merely speculative. 
This argument is belied not only by the evidence that the Minnesota
Attorney General may seek remedies against DirectMed for failure to comply with
the CID but also by the evidence demonstrating the clear disagreement between
Lifeguard and DirectMed regarding whether customers or members of the Lifeguard
Health Options program are members of CASA. 
Lifeguard does not consider that customers or members of the Lifeguard
Health Options program are members of CASA even though materials received by
those customers include a reference that Lifeguard Health Options is a product
provided through CASA.  The trial court
could have reasonably inferred from this evidence that Lifeguard (or a
third-party marketer) was selling memberships that included literature
indicating membership in CASA but not considering those who purchased the
memberships to be members of CASA.  In
light of the CID=s statement that the Minnesota
Attorney General has received complaints that DirectMedCwhose
back-office support is handled by LifeguardCengages
in deceptive and fraudulent misrepresentations in the sale of its services,
DirectMed=s claimed injury is not merely
speculative.








Regarding imminency, the Minnesota Attorney
General granted DirectMed an extension of time to respond to the CID with no
set response date, but we decline to accept Appellants=
suggestion that DirectMed offered no evidence regarding the imminency of the irreparable
injury it will suffer simply because the response date has been deferred once.

Although a court will generally not enforce
contractual rights by injunction because a party can Ararely@
establish an irreparable injury and an inadequate legal remedy when damages for
breach of contract are available, this circumstance is tempered by the abuse of
discretion standard of review, which prohibits this court from substituting its
judgment for that of the trial court.  Butnaru,
84 S.W.3d at 211.  Viewing the evidence
in the light most favorable to the trial court=s order,
indulging every reasonable inference in its favor, we hold that DirectMed presented
some evidence reasonably supporting the trial court=s
conclusion that DirectMed will suffer irreparable injury in the absence of a
temporary injunction, whether the injunction is considered mandatory or
not.  Thus, the trial court=s
conclusion that DirectMed will suffer irreparable injury was not arbitrary and
unreasonable nor made without reference to guiding rules and principles.  We overrule this part of Appellants= first
subissue.

C.     CASA








To obtain a temporary injunction, CASA, like
DirectMed, had to demonstrate irreparable injury.  The evidence shows that CASA and DirectMed
are distinct business entities organized under the laws of different states.  All DirectMed customers are also members of
CASA, but all CASA members are not customers of DirectMed.

The CID is directed to DirectMed, not CASA.  It states that the Minnesota Attorney General
has information establishing reasonable grounds to believe that DirectMed, not
CASA, has violated one or more Minnesota consumer protection statutes.  The CID also requires that DirectMed, not
CASA, answer interrogatories and respond to requests for production.  The CID thus advises of no grounds or
allegations related to CASA=s
conduct, and it requires that no action be taken by CASA.








Bruggemann, CASA=s
president, opined that because CASA is referenced in the CID, he (presumably on
behalf of DirectMed, CASA, or both) needs CASA=s data
and information in Lifeguard=s
possession so that DirectMed can fully respond to the CID.  Bruggemann was referring to interrogatory
number two, which requests that DirectMed provide certain information about
CASA=s and
DirectMed=s business relationship.  Interrogatory number two, however, does not
request that CASA provide any information in response to the CID, and it
requests that DirectMed provide information related to other entities in
addition to CASA, including ABeech
Street Corporation,@ AUnited
Health Care,@ AThe
United States Life Insurance Company in the City of New York,@ and AThe
Health Connection.@ 
There is no evidence that DirectMed requires any information from these
entities, who are not parties to this litigation, to fully respond to the CID.

Appellees commingle the arguments and evidence
that they contend support the trial court=s
conclusion that they each will suffer irreparable harm.  Having distinguished DirectMed=s
evidence of irreparable harm, CASA directs us to no evidence that it will
suffer any irreparable injury if DirectMed fails to fully and properly respond
to the CID.[5]  Viewing the evidence in the light most
favorable to the trial court=s order,
we hold that the trial court abused its discretion by concluding that CASA will
be irreparably injured in the absence of a temporary injunction.  See Butnaru, 84 S.W.3d at 204.  We sustain this part of Appellants= first
subissue.

V.  Status Quo and Ultimate Object of Suit








In the second subissue of their only issue,
Appellants argue that the trial court abused its discretion by entering the
temporary injunction because it destroys the status quo and provides Appellees
with the ultimate object of the suit. 
Appellants contend that prior to Appellees= demand
for data and information, Lifeguard had never provided Appellees with access to
credit card and bank account information regarding DirectMed members and
non-contested CASA members or to any of the records relating to the AContested
CASA Members.@

AStatus quo is defined as >the
last, actual, peaceable, noncontested status which preceded the pending
controversy.=@  Universal Health Servs., Inc. v. Thompson,
24 S.W.3d 570, 577 (Tex. App.CAustin
2000, no pet.) (quoting Transp. Co. v. Robertson Transps., Inc., 152
Tex. 551, 261 S.W.2d 549, 553B54
(1953)).  AIf an
act of one party alters the relationship between that party and another, and
the latter contests the action, the status quo cannot be the relationship as it
exists after the action.@  Benavides ISD v. Guerra, 681 S.W.2d
246, 249 (Tex. App.CSan Antonio 1984, writ ref=d
n.r.e.).








It is undisputed that Lifeguard performs
back-office support for DirectMed.[6]  Bruggemann testified that Lifeguard=s
operations include a Afulfillment operation,@
customer service, an IT department, an account management department, a claims
department, and Aso on and so forth.@  The agreement between Lifeguard and
DirectMed, which is still in effect, provides that part of Lifeguard=s duties
and responsibilities include providing access to products and services for
health benefits and services to DirectMed=s
customers, providing toll-free 800 services for DirectMed=s
members to access providers, providing an internet website for members to
locate provider and access web links, and providing DirectMed with fulfillment
information required to support the benefits offered by Lifeguard to
DirectMed.  Lifeguard acknowledged
DirectMed=s exclusive rights to the names,
addresses, and telephone numbers of its customers.  During the hearing on Appellees=
application for a temporary injunction, Bruggemann agreed that Lifeguard
routinely provides social security numbers and credit card and bank information
to its clients like DirectMed.  The
following exchange occurred:

[Appellees= counsel]:  And would you read the - - the second
sentence of that e-mail, this file contains?

 

[Bruggemann]:  This file contains Social Security numbers,
credit card and bank information, so it needs to be encrypted.  As soon as we receive IAC=s PGP key, we can
transmit the data.  The file will be - -
is in the format that they provided us.

 

[Appellees= counsel]:  So Lifeguard would routinely send Social
Security numbers, credit card and bank information to its - - its clients like
DirectMed?

 

[Bruggemann]: Yes.








Appellees thus presented some evidence supporting the trial court=s order
requiring Appellants to turn over DirectMed=s
customer credit card and bank information. 
We overrule this part of Appellants= second
subissue.

We need not address Appellants=
argument that the temporary injunction destroys the status quo and awards
Appellees the ultimate relief they seek in the suit due to the injunction=s
requirement that Lifeguard turn over to a third party data and information
relating to the AContested CASA Members@ because
we have already determined above that the trial court abused its discretion by
concluding that CASA will be irreparably harmed in the absence of a temporary
injunction.  Because CASA did not
demonstrate irreparable harm, an essential element of injunctive relief, it is
not entitled to a temporary injunction requiring Appellants to turn over data
and information regarding its members, whether they are AContested
CASA Members@ or non-contested CASA members.

We hold that the trial court=s
temporary injunction properly preserves the status quo pending resolution of
the suit and does not award Appellees the ultimate relief they seek in the
suit.  We overrule Appellants= second
subissue arguing to the contrary.

 

 

 








VI.  Vague, Overly Broad, Not Specific

In the third subissue of their only issue,
Appellants argue that the order granting the temporary injunction is
unenforceable because it is vague, overly broad, and not specific in its terms.

Rule of civil procedure 683 provides in relevant
part that every order granting an injunction shall set forth the reasons for
its issuance, shall be specific in terms, and shall describe in reasonable
detail and not by reference to the complaint or other document the act or acts
sought to be restrained.  Tex. R. Civ. P.
683.  The requirements of rule 683 are
mandatory, and an order granting a temporary injunction that does not meet them
is subject to being declared void and dissolved.  InterFirst Bank San Felipe, N.A. v. Paz
Constr. Co., 715 S.W.2d 640, 641 (Tex. 1986); see Qwest Commc=ns Corp.
v. AT&T Corp., 24 S.W.3d 334, 337 (Tex. 2000).

A.     Paragraphs
6, 7, & 8








Appellants argue that the injunction is
unenforceable because its paragraphs 6, 7, and 8 are vague and overly
broad.  Paragraphs 6, 7, and 8 concern
only the third-party vendor=s
handling of the AContested CASA Members=@ data
and information.  As with Appellants= status
quo argument regarding AContested CASA Members,@ we need
not address this argument because CASA failed to demonstrate irreparable harm,
negating its entitlement to injunctive relief.

B.     AUnfettered@

Appellants argue that the order is unenforceable
because the term Aunfettered@ as used
in the injunction=s paragraph 1 is vague and
overly broad.  They contend that they are
or have been in possession of DirectMed and CASA records that are not in
electronic form and that A[i]f read literally, >unfettered= access
would enable Appellees to demand to see the records at any time of day or
night, on weekends and holidays, and as often as they wish.@  We disagree. 
Paragraph 1 enjoins Appellants from denying Appellees unfettered access
to Aall
data, information and records, regarding DirectMed and CASA members, excluding >Contested
CASA Members.=@  Paragraph 2 determines how the Adata,
information and records@ will be transferredCit
requires that Appellants transfer the data and information to Appellees via a
hard drive device.  Paragraph 4 requires
Appellants to update daily the data transferred pursuant to paragraph 2 using
an SFTP site.  The injunction thus
requires the transfer of data, information, and records through electronic
means only.  Appellants=
argument speculating about how data that is not in electronic form will be
transferred is irrelevant to whether the order is enforceable because no part
of the injunction requires the transfer of data in a form other than
electronic.








Appellees=
argument is also unpersuasive because it examines the term Aunfettered@ in a
vacuum and not in light of the evidence presented at the injunction
hearing.  Appellees filed this lawsuit
primarily because they requested access to all of the DirectMed and CASA
data and records under the control of Lifeguard and Amacore but were provided
with only part (approximately 20%, according to Williams) of that
data and information.  The trial court=s use of
the term Aunfettered@ is
unambiguously intended to prohibit Lifeguard from cherry-picking what data and
information it turns over to Appellees. 
We hold that the trial court=s use of
the term Aunfettered@ is not
vague and overly broad, and we overrule this part of Appellants= third
subissue.

C.     Amacore








Appellants argue that the injunction is
unenforceable as to Amacore because there is no evidence that Amacore has
possession of any of the data and information that the order requires be turned
over.  We agree.[7]  Amacore is Lifeguard=s parent
company.  It is undisputed that Lifeguard
is in possession of Appellees= data
and information because of agreements that it, not Amacore, has with
Appellees.  According to Williams, the
data and information that Appellees seek is retained in the L.I.S.A. system.  Bruggemann testified that Aif you
have full access to the LISA system you can see every aspect,
every - - every ounce of information that=s been
collected on - - on each member for - - under each plan,
under each group, and under each client.@  According to Bruggemann, L.I.S.A is
maintained by Lifeguard.  Bruggemann
testified that Amacore owns a call center that sells DirectMed=s
products, but there is no evidence that Amacore has possession of any of the
data that Appellees seek.  We sustain
this part of Appellants= third subissue.

D.     Date
Limitation

Appellants argue that the temporary injunction
order is overly broad because it does not contain a date limitation consistent
with the CID request for information. 
They contend that the primary reason for the relief granted by the
injunction order was so that Appellees could properly respond to the CID; that
the CID requires information and documents from July 1, 2003, to the present;
and that Appellees did not present any evidence of the need for information and
documents prior to July 1, 2003.








The CID does not limit the information and
documents that DirectMed may produce from July 1, 2003, to the present.  Rather, it also states, AIf it is
necessary to refer to a prior time to fully answer an interrogatory or
respond to a request for production of documents, YOU should do so.@
[Emphasis added.]  Because the CID
permits DirectMed to produce information and documents from before July 1,
2003, in order to fully respond to its demands, the trial court did not abuse
its discretion by not including in its order a date limitation of July 1,
2003.  We overrule this part of
Appellants= third subissue.

VII.  Motion to Strike Affidavit








Appellants filed a motion to strike the affidavit
of Robert T. Trautmann, an attorney who works with an attorney representing
Appellees.  The affidavit, which is dated
September 21, 2009, and is attached to Appellees= brief
as part of the appendix, purports to relate information regarding the Minnesota
Attorney General=s ongoing investigation of
DirectMed.  AIt is
axiomatic that an appellate court reviews actions of a trial court based on the
materials before the trial court at the time it acted.@  Methodist Hosps. of Dallas v. Tall,
972 S.W.2d 894, 898 (Tex. App.CCorpus
Christi 1998, no pet.) (citing Univ. of Tex. v. Morris, 162 Tex. 60, 64,
344 S.W.2d 426, 429 (reasoning that appellate court=s Aaction
must be controlled by the record made in the trial court at the time the
injunction was issued@), cert. denied, 366 U.S.
9 (1961))).  Trautmann=s
affidavit was not part of the evidence adduced by either party at the hearing
on Appellees= application for a temporary
injunction and was not considered by the trial court in entering the temporary
injunction order, which was signed on August 3, 2009.  We grant Appellants= motion
to strike Robert T. Trautmann=s
affidavit.

VIII.  Conclusion

Having (1) sustained part of Appellants= first
subissue complaining that CASA failed to demonstrate irreparable injury, (2)
sustained part of Appellants= third
subissue complaining that there is no evidence that Amacore has possession of
the data and information sought by Appellees, and (3) overruled the remainder
of Appellants= subissues and arguments, we
modify the trial court=s findings and rulings set forth
on pages one through two of the order as follows:








Unless Defendant Lifeguard Benefit Services, Inc. (Lifeguard) is
immediately enjoined, Plaintiff Direct Medical Network Solutions, Inc.
(DirectMed) will suffer immediate and irreparable injury and extreme hardship
for which there is no adequate remedy at law. 
In part, the Court finds that absent a temporary injunction,
(1) Plaintiff DirectMed will be denied possession of the data,
information, and records regarding DirectMed members to which they have the
right of possession; (2) Plaintiff DirectMed will not be able to properly
respond to the Minnesota Attorney General=s Civil Investigative Demand or other
investigations; (3) Plaintiff DirectMed will not be able to properly
prepare and defend itself in connection with such investigations;
(4) Plaintiff DirectMed=s failure to prepare and respond adequately to
any investigations or actions by Defendant Lifeguard would create grounds for
further action against it, could affect the nature of the investigation,
potentially expose Plaintiff DirectMed and/or its officers to charges being
initiated, and impact their goodwill, business, client relationships,
reputation in the business community, and ability to compete on a level playing
field in the industry; (5) any charges arising from the failure to respond to
any investigation or complaint would cause Plaintiff DirectMed immediate
irreparable harm and damage through the loss of customers, damage to its
relationships with clients, benefits providers, vendors, loss of goodwill, and the
permanent injury to Plaintiff DirectMed=s business reputation; (6) failing to have
possession of the data, information, and records concerning all of its
customers= and members= records would injure
Plaintiff DirectMed=s ability to service and
direct service of those customers and members and their benefits and to
investigate and evaluate the services being provided to those customers and
members.

 

We modify paragraph 1 of the temporary injunction order to read as
follows:

That Defendant Lifeguard
is hereby enjoined from denying Plaintiff DirectMed and its agents, employees,
and/or contractors from having immediate possession of and unfettered access to
all data, information, and records regarding DirectMed members.

 

We modify paragraph 2 to
read as follows:

 

Defendant Lifeguard
shall, on or before 5:00 P.M. on the tenth day after the Supreme Court of Texas
dissolves or lifts the stay entered on September 14, 2009, in Cause No.
09-0768, transfer an external hard drive device to be provided by Plaintiff
DirectMed, and to deliver to Plaintiff DirectMed all data, information, and
records, including but not limited to credit card and bank information
regarding DirectMed members, in the record layout format attached to the trial
court=s Order as Appendix A.

 

We modify paragraph 4 to
read as follows:

 

Defendant Lifeguard shall
update the transfers referred to in Paragraph 2 hereof on a daily basis by use
of an SFTP site designated by Plaintiff DirectMed.

 

We modify paragraph 10 to
read as follows:

 








Defendant Lifeguard,
shall within twenty-four hours of receipt of any inquiry, investigative demand,
or like communication received by Defendant Lifeguard regarding Plaintiff
DirectMed, its members, or any plan offered by Plaintiff DirectMed, forward the
same to Plaintiff DirectMed.

 

We modify paragraph 11 to
read as follows:

 

Defendant Lifeguard shall
be enjoined from engaging in any responses or communications with the Minnesota
Attorney General or any other investigative unit purportedly on Plaintiff
DirectMed=s behalf.

 

We further modify the temporary injunction order to delete paragraphs
3, 5, 6, 7, 8, and 9, as those paragraphs are only relevant to the transfer of
data and information relating to the AContested
CASA Members.@ 
We affirm the temporary injunction as modified.

 

 

BILL
MEIER

JUSTICE

 

PANEL:  LIVINGSTON, WALKER, and MEIER, JJ.

 

DELIVERED:  February 11, 2010

 











[1]According to Rocky
Williams, a DirectMed employee, data and information about DirectMed and CASA
members is located in the L.I.S.A. software system.





[2]The demand included, but
was not limited to, Aall of the client
records, member records, billing records, agent records, member complaints,
promotional material[,] and all other member & financial data with regards
to DirectMed and CASA.@





[3]According to Williams,

 

There was information that - - files that would not be usable because
there was misalignment, or there was fields that were left blank, which by
designation in the record layout it would have contained specific data.  And in the review of that data, there was no
information in those fields, which then leaves the question of why is this
blank?  What=s the problem here?





[4]The order granting the
temporary injunction refers to these individuals as the AContested CASA Members.@





[5]Nor do Appellees argue or
point to any evidence that in terms of their business relationship, CASA is so
inextricably intertwined with DirectMed that CASA will be irreparably injured
without the temporary injunction.





[6]In a letter addressed to
Bruggemann dated June 30, 2009, Smith acknowledged that ALifeguard entered into
Servicing Agreements with . . . DirectMed many years ago.@  In another letter addressed to Bruggemann
dated June 30, 2009, Smith stated that there are areas of common interest in
which Lifeguard may be helpful in providing the Minnesota Attorney General with
materials, A[g]iven the Servicing
Agreement in place between Lifeguard and DirectMed.@





[7]Appellees= response that Appellants
failed to preserve this argument for appellate review by not asserting it at
the trial court level is without merit.  See
Big D Props., Inc. v. Foster, 2 S.W.3d 21, 23 (Tex. App.CFort Worth 1999, no pet.)
(AWe . . .
hold that rule 683=s requirements may not be
waived.@); see also Kaufmann
v. Morales, 93 S.W.3d 650, 655 n.2 (Tex. App.CHouston [14th Dist.]
2002, no pet.) (same).